ACCEPTED
15-25-00031-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/3/2025 1:22 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00031-CV[1]

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/3/2025 1:22:13 PM
CHRISTOPHER A. PRINE
Clerk

---

*In re* NONPARTY PATIENT NO. 1, NONPARTY PATIENT NO. 2, NONPARTY PATIENT NO. 3, NONPARTY PATIENT NO. 4, NONPARTY PATIENT NO. 5, NONPARTY PATIENT NO. 6, NONPARTY PATIENT NO. 7, AND NONPARTY PATIENT NO. 8, NONPARTY PATIENT NO. 9, NONPARTY PATIENT NO. 10, AND NONPARTY PATIENT NO. 11,

*Relators.*

---

On Writ of Mandamus
493rd Judicial District Court, Collin County

---

## STATE'S RESPONSE TO NONPARTY PATIENTS' SECOND EMERGENCY MOTION TO STAY PENDING PETITION FOR WRIT OF MANDAMUS AND MOTION TO LIFT STAY

---

**To the Honorable Fifteenth Court of Appeals:[2]**

Two weeks ago, this Court granted a stay of Judge Christine Nowak's order for Childrens' Hospital to produce redacted medical records pertaining to Relators to Relators' own counsel and to counsel for the defendant-physicians involved in the State's underlying lawsuit (for a small handful of unrepresented non-party patients).

---

[1] This Response also applies to No. 15-25-00032-CV and the State incorporates it therein for all purposes.

[2] In light of the emergency posture in which Relators have raised their Motion, this Response has been prepared on an extremely abbreviated timeline. The State apologizes for its imperfect citations and reduced formalities.

The Court granted this stay in an *ex parte* and emergency posture based on the now disproven—and, at all times, baseless—representations of Relators' counsel that Childrens' medical records were commingled between Relators and unrepresented non-party patients. Because these claims have been disproven (with respect to Childrens' Hospital) and because Relators haven't even alleged that UTSW records have ever been commingled, the Court should deny Relators' Second Emergency Motion for Stay and lift its original stay with respect Childrens.

## I.  BACKGROUND

1. On March 20, 2025, Judge Christine Nowak of the 493rd District Court in Collin County granted in part, and denied in part, Relators' Motion to Stay Production from Childrens Hospital and UTSW. See Ex. C.

2. With respect to Childrens' Hospital, Judge Nowak ordered that Childrens was to begin production of "medical, laboratory, billing, and prescription records" from January 1, 2022 to present for the relevant patients relating to "testosterone or puberty blockers."[3]  Ex. E; *see also* Ex. C.

---

[3] In doing so, the Court recognized the parallel litigation that Relators are pursuing in Dallas County and specifically (and correctly) noted that only some of the non-party patients involved in these lawsuits have ostensibly obtained protection from the State's subpoenas in the 95th District Court. More specifically, the Court recognized that the 95th District Court had only heard a motion for protection from the non-party patients of Dr. May C. Lau. The 95th District Court had never addressed the subpoenas relating to Dr. Brett Cooper or his associated patients. As such, and at least with respect to Dr. Cooper's patients, the Court noted "I don't believe that this Court's ruling [] conflicts with any order our of the [Dallas County] Cooper case." Ex. C, p. 128.

3. Notably, the Court's orders did not contemplate production in the ordinary sense. Rather, the Court's orders merely directed Childrens' Hospital to turn-over redacted medical records to the non-party patients' counsel (for represented patients) and to the defendant-physician's counsel (for unrepresented patients) ***so that the respective attorneys could assert privileges on behalf of the patients***, mark information for redactions, and submit the materials for an *in camera* review. Ex. E.

4. The March 20th orders did not contemplate any production from UTSW. See Ex. C. Indeed, as Relator's counsel previously represented to this Court, Judge Nowak's March 20th orders were clear that "UT Southwestern [would] produce no records." Dec. of W. Logan In Support of Pet. for Writ of Mandamus (dated 3/20/2025).

5. Immediately following the March 20th hearing, Relators filed two Petitions for Mandamus in this Court, one pertaining to each of the Collin County cases. For each petition, Relators also filed an Emergency Motion to Stay Pending Petition for Writ of Mandamus.

6. In each of these filings, the thrust of Relators' urgency was Relators' allegation that Judge Nowak ordered production in spite of evidence that medical records for unrepresented patients were "very likely comingled" with documents related to

Relators and that such production would "seriously jeopardize[] the privileges asserted by Relators." *Id.*; Pet. for Writ of Mandamus, p. 6.

7. On this basis, on March 21st, this Court stayed Judge Nowak's March 20, 2025 production orders.

8. Thereafter, on March 26, 2025, after an agreement was reached relating to UTSW's legal representation, Judge Nowak extended her prior orders to UTSW and stated that UTSW's production obligations would "kick in now." Ex. D, p. 11.

9. Off-the-record, and in a subsequent email, the Court expressed its intention that—***if the Non-Party Patients were going to pursue another petition for mandamus relating to the UTSW orders***—the Court's intention was to put both appeals on the same timeline and appellate track.

10. In light of UTSW's counsel's recent entry into an already convoluted matter, and to account for Relators' suggestion that they might file another mandamus, the State agreed to give UTSW a one-week extension, until April 2nd, to begin production and specifically sought clarification as to whether any of UTSW's medical records were commingled. Ex. A, pp. 1-2.

11. The State also pressed Relators about what they contended might be comingled in the productions. Ex. B, pp. 2-3, 6-8. Relators responded that they believed "emails" and "visit logs" might be comingled in the records. *Id.* at p. 2.

12. For its part, Childrens confirmed that it did not understand these materials to be the subject of Judge Nowak's orders and that Childrens was not planning to produce these materials. *Id.*, p. 1.

13. Notably, in light of the above-mentioned discussions and the State's agreed extension, Relators did not seek a stay of the Court's UTSW orders during the one-week extension—and even now, in this Second Emergency Motion for Stay—have not alleged that UTSW's records are commingled.

14. On April 2, 2025, UTSW inadvertently issued production to the State. Within hours of that production, the State confirmed that it would destroy any copies that it had received. Thereafter, Relators filed this Second Emergency Motion to Stay.

## II. ARGUMENT

**a. Unlike The Prior (Now Disproven) Claim that Childrens' Production "Very Likely" Included Comingled Records, Relators Have Made No Such Allegation With Respect to UTSW.**

15. Relators misrepresented the record to this Court when they sought, and obtained, an emergency stay of Judge Nowak's March 20, 2025 orders. Relators Petition for Mandamus very plainly suggested to this Court that Judge Nowak ordered production from Childrens' in spite of evidence that medical records were comingled. *See* Pet. for Mandamus, p. 6 (citing to the then-forthcoming 3/20/2025

6

transcript); *see also* Second Emergency Mot. to Stay, p. 2 ("Childrens had to produce records… even though those records may commingle Relators' information with the unrepresented patients'"). As the record now very clearly demonstrates, however, there has never been any evidence whatsoever of comingling. The only mention of comingling has come from Relators' own counsel, who continues to parrot the same unsubstantiated belief that records are comingled.

16. But that is not the end. When the State finally had an opportunity to press Relator's counsel about the 'comingling' allegation (after Relators' had already obtained emergency *ex parte* relief from this Court) Relators' counsel surrendered to the reality that his allegation did not even pertain to the "medical, laboratory, billing, and prescription records" for care and treatment "relating to testosterone or puberty blockers" that Judge Nowak ordered to be produced. Rather, Relators allegation of comingling was apparently limited to different records—visit logs and emails— that Judge Nowak hadn't even yet ordered to be produced.

17. While it might not be initially apparent to this Court, the frivolity and obfuscation of Relators in this respect cannot be lost. The parties, non-parties, and Judge Nowak all knew exactly what Judge Nowak ordered to be produced and "visit logs" and "emails" were not among the contemplated production. Indeed, the parties, non-parties, and Judge Nowak have spent literal days at this point deliberating

7

the discrete categories of records at issue in this case. To this end, when Judge Nowak granted, in part, Relator's Motion to Stay production, she specifically limited the production to records pertaining to "testosterone or puberty blockers," thus removing any generic "visit logs" from the production. *See* Ex. C, p. 128; *see also* Ex. E. All of this is further confirmed by the fact that the State, Childrens, and apparently UTSW, all agree that "emails" and "visit logs" were never among the contemplated production ordered by Judge Nowak. *See* Ex. B, p. 1.

18.     To this end, the fact that Relators refrained from making a 'comingling' allegation in this Second Emergency Motion for Stay with respect to UTSW is an unmistakable capitulation and demonstration of the distress of their prior position.

19.     In light of Childrens' confirmation that the emails and visit logs alleged to be "very likely comingled" are not even a part of the production—and the absence of any similar allegation relating to UTSW records—the Court should lift its prior stay of Judge Nowak's March 20th orders and deny Relator's Second Emergency Motion for Stay.

### b. Judge Nowak Did Not Order Production from UTSW Until After This Court's March 21st Order.

20.     Relators' new claim that their prior Petition for Mandamus and Emergency Motion for Stay related to both Childrens and UTSW is belied by their own prior filings. As Relator's counsel previously represented to this Court, Judge

8

Nowak's March 20th orders were clear that "UT Southwestern [would] produce no records." Dec. of W. Logan In Support of Pet. for Writ of Mandamus (dated 3/20/2025).

21. Judge Nowak's March 20th statements also make clear that her orders solely related to Childrens. Judge Nowak specifically stated that she was "tabl[ing]" UTSW's production until such time as its counsel was resolved and it could re-assert its motion for protection. Ex. C, p. 100

22. In light of the foregoing, and the fact that Judge Nowak did not order production from UTSW until March 26th, this Court could not have granted emergency relief pertaining to UTSW because the trial court had not even ordered such production at that time.

**c. Judge Nowak Did Not Contravene This Court's Orders, But Merely Gave Relators An Opportunity to File a Second Mandamus and Consolidate the Appeals.**

23. Relators misconstrue the email from Judge Nowak's Court Coordinator, Ms. Patterson, and this Court should not read words into that email that do not exist. Contrary to Relators' position, Judge Nowak did not order new production in spite of this Court's stay. Rather, Judge Nowak's expressed intent was that—*if Relators were going to seek appellate review of her UTSW production orders*— Relators could present such arguments to this Court in a consolidated manner.

9

24. But Relators did not do this. Despite the State's agreement to a one-week extension before UTSW began production under the Court's March 26th orders, Relators never sought appellate review of those orders. And for good reason: their 'commingling' allegation had shattered.

## PRAYER

For the foregoing reasons, the State respectfully prays that this Honorable Court deny Relators' Second Emergency Motion to Stay, lift the prior stay of production that it entered on March 21st, and for all other relief to which the State may be entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

/s/ *Rob Farquharson*
ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

ABIGAIL E. SMITH
Assistant Attorney General
State Bar No. 24141756

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548
Austin, Texas 78711
Tel: (214) 290-8830
Fax: (214) 969-7615
*Counsel for the State*

# Exhibit A

# Rob Farquharson

**From:** Rob Farquharson
**Sent:** Wednesday, March 26, 2025 5:28 PM
**To:** Patrick Todd; Sutker, Cory; Holland, Anika; Logan, William; Jlascano@steptoe.com; WFG_DrCooper; 'avi.moshenberg@lmbusinesslaw.com'; David Shatto; Kimberly Gdula; Brianna Krominga; Cooper, Jackie; 'awolf@steptoe.com'; Newsome, Jervonne D.; Martin Cohick; 'Legg, W. Henry'; Jeff Lutz
**Cc:** Johnathan Stone; Pauline Sisson; Emily Samuels; Abby Smith; Amy Pletscher; nonparty-patient-counsel
**Subject:** RE: 493-07676-2024 & 493-08026-2024

We can agree to a one-week suspension of your obligation to produce the documents, but would ask that you confirm the segregation/commingling issue as expediently as possible, so as to help all parties avoid the need for additional appellate proceedings.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

**From:** Patrick Todd <Patrick.Todd@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 5:24 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Sutker, Cory <Cory.Sutker@cooperscully.com>; Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Hi Rob,

We can't yet confirm one way or the other about whether they are segregated or commingled without first reviewing them. (Hence why we are asking for a one week extension.) Believe me, there is nobody more interested to know this answer than I.

Best,

Patrick

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 4:57 PM
**To:** Sutker, Cory <Cory.Sutker@cooperscully.com>; Holland, Anika <AHolland@willkie.com>; Logan, William

<WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Mr. Todd:

I am sympathetic to your position, but I hope you can understand ours too. The Court made its order this morning fully aware of the fact that you had just entered into the case. On top of that, we have been seeking these records for more than two months and have already given UTSW extensions to comply.

With all of this said, Mr. Logan has suggested that he may be planning to file a mandamus based on his belief that UTSW patient records are somehow comingled amongst themselves. We are not aware of any basis for this claim, and indeed, if he is correct, UTSW may have bigger problems in terms of HIPAA.

If we agree to an extension, as an initial matter, can you confirm with your client and/or its former counsel whether UTSW's relevant patient records are either segregated by patient or commingled?

With this information, we may be able to work something out.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Sutker, Cory <Cory.Sutker@cooperscully.com>
**Sent:** Wednesday, March 26, 2025 4:35 PM
**To:** Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

I am not sure Children's has a say in this, but, to the extent it matters, we have no opposition



**Cory Sutker**

900 Jackson St. #100, Dallas, TX 75202
Direct: 214.712.9558 | Main: 214.712.9500 | Fax: 214.712.9540
Email: Cory.Sutker@cooperscully.com | www.cooperscully.com

This correspondence is for the named persons' use only, and it contains confidential or legally privileged information or both. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this correspondence in error, please immediately notify the sender and delete it from your system. You must not disclose, copy or rely on any part of this correspondence if you are not the intended recipient.

**From:** Holland, Anika <AHolland@willkie.com>
**Sent:** Wednesday, March 26, 2025 4:30:24 PM
**To:** Logan, William <WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com <Jlascano@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Sutker, Cory <Cory.Sutker@cooperscully.com>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Agreed (on behalf of Dr. Cooper).

**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 2:29 PM
**To:** Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher

<[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

## *** EXTERNAL EMAIL ***

For our part, we believe giving UTSW's counsel a week to get up to speed on the case before it decides how to proceed is appropriate and more than reasonable.

---

**From:** Patrick Todd <[Patrick.Todd@oag.texas.gov](mailto:Patrick.Todd@oag.texas.gov)>
**Sent:** Wednesday, March 26, 2025 4:09:16 PM
**To:** Logan, William <[WLogan@winston.com](mailto:WLogan@winston.com)>; Rob Farquharson <[Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)>; Holland, Anika <[AHolland@willkie.com](mailto:AHolland@willkie.com)>; [Jlascano@steptoe.com](mailto:Jlascano@steptoe.com) <[Jlascano@steptoe.com](mailto:Jlascano@steptoe.com)>; WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; 'avi.moshenberg@lmbusinesslaw.com' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Kimberly Gdula <[Kimberly.Gdula@oag.texas.gov](mailto:Kimberly.Gdula@oag.texas.gov)>; Brianna Krominga <[Brianna.Krominga@oag.texas.gov](mailto:Brianna.Krominga@oag.texas.gov)>; 'Sutker, Cory' <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Cooper, Jackie' <[Jackie.Cooper@cooperscully.com](mailto:Jackie.Cooper@cooperscully.com)>; 'awolf@steptoe.com' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; Newsome, Jervonne D. <[JNewsome@winston.com](mailto:JNewsome@winston.com)>; Martin Cohick <[Martin.Cohick@oag.texas.gov](mailto:Martin.Cohick@oag.texas.gov)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>; Jeff Lutz <[Jeff.Lutz@oag.texas.gov](mailto:Jeff.Lutz@oag.texas.gov)>
**Cc:** Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Amy Pletscher <[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Dear Counsel,

We (Martin and myself) were assigned to represent UTSW this morning. We were not afforded the opportunity to be at the hearing this morning and are still trying to get up to speed on what has happened so far in this case. We haven't been able to confer with our client yet or former counsel. We have also not been able to review the responsive records. As such, we cannot approve as to form the proposed order since we don't know what the court ordered at the hearing today.

We respectfully ask if the parties will agree to a one week delay to April 2, 2025, before UTSW is required to begin producing records to allow us to confer with our client, confer with former counsel, and review the records.

We would graciously appreciate extending us this professional courtesy.

Sincerely,

Patrick Todd



**Patrick Todd**
*Assistant Attorney General, Administrative Law Division*

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1660

**From:** Logan, William <<WLogan@winston.com>>
**Sent:** Wednesday, March 26, 2025 2:31 PM
**To:** Rob Farquharson <<Rob.Farquharson@oag.texas.gov>>; Holland, Anika <<AHolland@willkie.com>>; Jlascano@steptoe.com; WFG_DrCooper <<WFG_DrCooper@willkie.com>>; 'avi.moshenberg@lmbusinesslaw.com' <<avi.moshenberg@lmbusinesslaw.com>>; David Shatto <<David.Shatto@oag.texas.gov>>; Kimberly Gdula <<Kimberly.Gdula@oag.texas.gov>>; Brianna Krominga <<Brianna.Krominga@oag.texas.gov>>; 'Sutker, Cory' <<Cory.Sutker@cooperscully.com>>; 'Cooper, Jackie' <<Jackie.Cooper@cooperscully.com>>; 'awolf@steptoe.com' <<awolf@steptoe.com>>; Newsome, Jervonne D. <<JNewsome@winston.com>>; Martin Cohick <<Martin.Cohick@oag.texas.gov>>; Patrick Todd <<Patrick.Todd@oag.texas.gov>>; 'Legg, W. Henry' <<wlegg@steptoe.com>>
**Cc:** Johnathan Stone <<Johnathan.Stone@oag.texas.gov>>; Pauline Sisson <<Pauline.Sisson@oag.texas.gov>>; Emily Samuels <<Emily.Samuels@oag.texas.gov>>; Abby Smith <<Abby.Smith@oag.texas.gov>>; Amy Pletscher <<Amy.Pletscher@oag.texas.gov>>; nonparty-patient-counsel <<nonparty-patient-counsel@winston.com>>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Mr Walsh said so during one of our many conferences about productions in this matter.

While we're confirming things, can you please confirm service of all the unrepresented patients as required under Rule 205?

---

**From:** Rob Farquharson <<Rob.Farquharson@oag.texas.gov>>
**Sent:** Wednesday, March 26, 2025 2:29:12 PM
**To:** Logan, William <<WLogan@winston.com>>; Holland, Anika <<AHolland@willkie.com>>; Jlascano@steptoe.com <<Jlascano@steptoe.com>>; WFG_DrCooper <<WFG_DrCooper@willkie.com>>; 'avi.moshenberg@lmbusinesslaw.com' <<avi.moshenberg@lmbusinesslaw.com>>; David Shatto <<David.Shatto@oag.texas.gov>>; Kimberly Gdula <<Kimberly.Gdula@oag.texas.gov>>; Brianna Krominga <<Brianna.Krominga@oag.texas.gov>>; 'Sutker, Cory' <<Cory.Sutker@cooperscully.com>>; 'Cooper, Jackie' <<Jackie.Cooper@cooperscully.com>>; 'awolf@steptoe.com' <<awolf@steptoe.com>>; Newsome, Jervonne D. <<JNewsome@winston.com>>; Martin Cohick <<Martin.Cohick@oag.texas.gov>>; Patrick Todd <<Patrick.Todd@oag.texas.gov>>; 'Legg, W. Henry' <<wlegg@steptoe.com>>
**Cc:** Johnathan Stone <<Johnathan.Stone@oag.texas.gov>>; Pauline Sisson <<Pauline.Sisson@oag.texas.gov>>; Emily Samuels <<Emily.Samuels@oag.texas.gov>>; Abby Smith <<Abby.Smith@oag.texas.gov>>; Amy Pletscher <<Amy.Pletscher@oag.texas.gov>>; nonparty-patient-counsel <<nonparty-patient-counsel@winston.com>>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I do not recall Mr. Walsh (or even Mr. Sutker) saying that. Was it something he said in court?



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <<WLogan@winston.com>>
**Sent:** Wednesday, March 26, 2025 2:27 PM
**To:** Rob Farquharson <<Rob.Farquharson@oag.texas.gov>>; Holland, Anika <<AHolland@willkie.com>>; Jlascano@steptoe.com; WFG_DrCooper <<WFG_DrCooper@willkie.com>>; 'avi.moshenberg@lmbusinesslaw.com' <<avi.moshenberg@lmbusinesslaw.com>>; David Shatto <<David.Shatto@oag.texas.gov>>; Kimberly Gdula <<Kimberly.Gdula@oag.texas.gov>>; Brianna Krominga <<Brianna.Krominga@oag.texas.gov>>; 'Sutker, Cory' <<Cory.Sutker@cooperscully.com>>; 'Cooper, Jackie' <<Jackie.Cooper@cooperscully.com>>; 'awolf@steptoe.com' <<awolf@steptoe.com>>; Newsome, Jervonne D. <<JNewsome@winston.com>>; Martin Cohick <<Martin.Cohick@oag.texas.gov>>; Patrick Todd <<Patrick.Todd@oag.texas.gov>>; 'Legg, W. Henry' <<wlegg@steptoe.com>>
**Cc:** Johnathan Stone <<Johnathan.Stone@oag.texas.gov>>; Pauline Sisson <<Pauline.Sisson@oag.texas.gov>>; Emily Samuels

<<Emily.Samuels@oag.texas.gov>>; Abby Smith <<Abby.Smith@oag.texas.gov>>; Amy Pletscher <<Amy.Pletscher@oag.texas.gov>>; nonparty-patient-counsel <<nonparty-patient-counsel@winston.com>>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Rob,

We're not going to relitigate the bases for our petition and moving to stay via email, but to be clear, our clients' records were ordered produced beginning on March 21. As to whether UTSW may have co-mingled documents, UTSW's prior counsel, David Walsh, confirmed it was possible co-mingled records exist. We believe resolving the extent of such records, and how they should be dealt with, are questions in the first instance for the Dallas County Court.

Thanks,
William

---

**From:** Rob Farquharson <<Rob.Farquharson@oag.texas.gov>>
**Sent:** Wednesday, March 26, 2025 2:19:17 PM
**To:** Logan, William <<WLogan@winston.com>>; Holland, Anika <<AHolland@willkie.com>>; Jlascano@steptoe.com <<Jlascano@steptoe.com>>; WFG_DrCooper <<WFG_DrCooper@willkie.com>>; 'avi.moshenberg@lmbusinesslaw.com' <<avi.moshenberg@lmbusinesslaw.com>>; David Shatto <<David.Shatto@oag.texas.gov>>; Kimberly Gdula <<Kimberly.Gdula@oag.texas.gov>>; Brianna Krominga <<Brianna.Krominga@oag.texas.gov>>; 'Sutker, Cory' <<Cory.Sutker@cooperscully.com>>; 'Cooper, Jackie' <<Jackie.Cooper@cooperscully.com>>; 'awolf@steptoe.com' <<awolf@steptoe.com>>; Newsome, Jervonne D. <<JNewsome@winston.com>>; Martin Cohick <<Martin.Cohick@oag.texas.gov>>; Patrick Todd <<Patrick.Todd@oag.texas.gov>>; 'Legg, W. Henry' <<wlegg@steptoe.com>>
**Cc:** Johnathan Stone <<Johnathan.Stone@oag.texas.gov>>; Pauline Sisson <<Pauline.Sisson@oag.texas.gov>>; Emily Samuels <<Emily.Samuels@oag.texas.gov>>; Abby Smith <<Abby.Smith@oag.texas.gov>>; Amy Pletscher <<Amy.Pletscher@oag.texas.gov>>; nonparty-patient-counsel <<nonparty-patient-counsel@winston.com>>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

William:

My understanding of your emergency 15 COA filing (and its order, which was based purely on your allegations) was that the basis of your urgency was your allegation that Childrens' patient records are somehow comingled amongst themselves. Do you have a basis to claim that the same applies to UTSW's records?

The Court had already ordered these to be prepared and ready for production on 3/21.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <<WLogan@winston.com>>
**Sent:** Wednesday, March 26, 2025 2:10 PM
**To:** Rob Farquharson <<Rob.Farquharson@oag.texas.gov>>; Holland, Anika <<AHolland@willkie.com>>; Jlascano@steptoe.com; WFG_DrCooper <<WFG_DrCooper@willkie.com>>; 'avi.moshenberg@lmbusinesslaw.com'

<avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Counsel for UTSW:

Would you please advise on your position regarding the draft proposed orders and the Court's oral order today? Does UTSW intend to begin producing documents despite the stay from the 15th Court of Appeals? We need to know so we can decide whether to seek further relief from that Court.

Thanks,
William

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 1:46:15 PM
**To:** Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Jlascano@steptoe.com <Jlascano@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

They are on the chain: Patrick Todd and Martin Cohick.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Holland, Anika <AHolland@willkie.com>
**Sent:** Wednesday, March 26, 2025 1:44 PM
**To:** Logan, William <WLogan@winston.com>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>

**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Rob—it doesn't look like UTSW's new counsel is on this thread either. Shouldn't they be a part of this conversation given that UTSW is the subject of this order? Or did you already get their agreement separately?

**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 11:26 AM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

*** EXTERNAL EMAIL ***

Rob, thank you for agreeing to add counsel for Dr. Lau. We should also confer on the Court's request for a position regarding whether the April 16 hearing should go forward. Given the stay from the 15th Court of Appeals, the Nonparty Patients' position is that it should be vacated.

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 1:23 PM
**To:** Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; Logan, William <WLogan@winston.com>;

WFG_DrCooper <<u>WFG_DrCooper@willkie.com</u>>; 'avi.moshenberg@lmbusinesslaw.com'
<<u>avi.moshenberg@lmbusinesslaw.com</u>>; David Shatto <<u>David.Shatto@oag.texas.gov</u>>; Kimberly Gdula
<<u>Kimberly.Gdula@oag.texas.gov</u>>; Brianna Krominga <<u>Brianna.Krominga@oag.texas.gov</u>>; 'Sutker, Cory'
<<u>Cory.Sutker@cooperscully.com</u>>; 'Cooper, Jackie' <<u>Jackie.Cooper@cooperscully.com</u>>; 'awolf@steptoe.com'
<<u>awolf@steptoe.com</u>>; 'Cooper, Jackie' <<u>Jackie.Cooper@cooperscully.com</u>>; Newsome, Jervonne D.
<<u>JNewsome@winston.com</u>>; Martin Cohick <<u>Martin.Cohick@oag.texas.gov</u>>; Patrick Todd
<<u>Patrick.Todd@oag.texas.gov</u>>; 'Legg, W. Henry' <<u>wlegg@steptoe.com</u>>
**Cc:** Johnathan Stone <<u>Johnathan.Stone@oag.texas.gov</u>>; Pauline Sisson <<u>Pauline.Sisson@oag.texas.gov</u>>; Emily Samuels
<<u>Emily.Samuels@oag.texas.gov</u>>; Abby Smith <<u>Abby.Smith@oag.texas.gov</u>>; Amy Pletscher
<<u>Amy.Pletscher@oag.texas.gov</u>>; nonparty-patient-counsel <<u>nonparty-patient-counsel@winston.com</u>>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

No problem. But, to clarify, Mr. Wolf represents Dr. Lau and has been on all of the emails.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Holland, Anika <<u>AHolland@willkie.com</u>>
**Sent:** Wednesday, March 26, 2025 1:15 PM
**To:** Rob Farquharson <<u>Rob.Farquharson@oag.texas.gov</u>>; <u>Jlascano@steptoe.com</u>; Logan, William
<<u>WLogan@winston.com</u>>; WFG_DrCooper <<u>WFG_DrCooper@willkie.com</u>>; 'avi.moshenberg@lmbusinesslaw.com'
<<u>avi.moshenberg@lmbusinesslaw.com</u>>; David Shatto <<u>David.Shatto@oag.texas.gov</u>>; Kimberly Gdula
<<u>Kimberly.Gdula@oag.texas.gov</u>>; Brianna Krominga <<u>Brianna.Krominga@oag.texas.gov</u>>; 'Sutker, Cory'
<<u>Cory.Sutker@cooperscully.com</u>>; 'Cooper, Jackie' <<u>Jackie.Cooper@cooperscully.com</u>>; 'awolf@steptoe.com'
<<u>awolf@steptoe.com</u>>; 'Cooper, Jackie' <<u>Jackie.Cooper@cooperscully.com</u>>; Newsome, Jervonne D.
<<u>JNewsome@winston.com</u>>; Martin Cohick <<u>Martin.Cohick@oag.texas.gov</u>>; Patrick Todd
<<u>Patrick.Todd@oag.texas.gov</u>>; 'Legg, W. Henry' <<u>wlegg@steptoe.com</u>>
**Cc:** Johnathan Stone <<u>Johnathan.Stone@oag.texas.gov</u>>; Pauline Sisson <<u>Pauline.Sisson@oag.texas.gov</u>>; Emily Samuels
<<u>Emily.Samuels@oag.texas.gov</u>>; Abby Smith <<u>Abby.Smith@oag.texas.gov</u>>; Amy Pletscher
<<u>Amy.Pletscher@oag.texas.gov</u>>; nonparty-patient-counsel <<u>nonparty-patient-counsel@winston.com</u>>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I am adding Dr. Lau's counsel to this thread. They were omitted earlier.



**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: <u>+1 415 858 7411</u> | Fax: +1 415 858 7599
<u>aholland@willkie.com</u> | <u>vCard</u> | <u>www.willkie.com bio</u>
Pronouns: she, her, hers

---

**From:** Rob Farquharson <<u>Rob.Farquharson@oag.texas.gov</u>>
**Sent:** Wednesday, March 26, 2025 11:14 AM
**To:** Logan, William <<u>WLogan@winston.com</u>>; WFG_DrCooper <<u>WFG_DrCooper@willkie.com</u>>;
'avi.moshenberg@lmbusinesslaw.com' <<u>avi.moshenberg@lmbusinesslaw.com</u>>; David Shatto
<<u>David.Shatto@oag.texas.gov</u>>; Kimberly Gdula <<u>Kimberly.Gdula@oag.texas.gov</u>>; Brianna Krominga
<<u>Brianna.Krominga@oag.texas.gov</u>>; 'Sutker, Cory' <<u>Cory.Sutker@cooperscully.com</u>>; 'Cooper, Jackie'
<<u>Jackie.Cooper@cooperscully.com</u>>; 'awolf@steptoe.com' <<u>awolf@steptoe.com</u>>; 'Cooper, Jackie'

\<Jackie.Cooper@cooperscully.com\>; Newsome, Jervonne D. \<JNewsome@winston.com\>; Martin Cohick \<Martin.Cohick@oag.texas.gov\>; Patrick Todd \<Patrick.Todd@oag.texas.gov\>
**Cc:** Johnathan Stone \<Johnathan.Stone@oag.texas.gov\>; Pauline Sisson \<Pauline.Sisson@oag.texas.gov\>; Emily Samuels \<Emily.Samuels@oag.texas.gov\>; Abby Smith \<Abby.Smith@oag.texas.gov\>; Amy Pletscher \<Amy.Pletscher@oag.texas.gov\>; nonparty-patient-counsel \<nonparty-patient-counsel@winston.com\>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

**\*\*\* EXTERNAL EMAIL \*\*\***

Sure. Please let us know by 2pm if there are any comments from Dr. Lau or Dr. Cooper's counsel.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William \<WLogan@winston.com\>
**Sent:** Wednesday, March 26, 2025 1:11 PM
**To:** Rob Farquharson \<Rob.Farquharson@oag.texas.gov\>; 'WFG_DrCooper@willkie.com' \<WFG_DrCooper@willkie.com\>; 'avi.moshenberg@lmbusinesslaw.com' \<avi.moshenberg@lmbusinesslaw.com\>; David Shatto \<David.Shatto@oag.texas.gov\>; Kimberly Gdula \<Kimberly.Gdula@oag.texas.gov\>; Brianna Krominga \<Brianna.Krominga@oag.texas.gov\>; 'Sutker, Cory' \<Cory.Sutker@cooperscully.com\>; 'Cooper, Jackie' \<Jackie.Cooper@cooperscully.com\>; 'awolf@steptoe.com' \<awolf@steptoe.com\>; 'Cooper, Jackie' \<Jackie.Cooper@cooperscully.com\>; Newsome, Jervonne D. \<JNewsome@winston.com\>; Martin Cohick \<Martin.Cohick@oag.texas.gov\>; Patrick Todd \<Patrick.Todd@oag.texas.gov\>
**Cc:** Johnathan Stone \<Johnathan.Stone@oag.texas.gov\>; Pauline Sisson \<Pauline.Sisson@oag.texas.gov\>; Emily Samuels \<Emily.Samuels@oag.texas.gov\>; Abby Smith \<Abby.Smith@oag.texas.gov\>; Amy Pletscher \<Amy.Pletscher@oag.texas.gov\>; nonparty-patient-counsel \<nonparty-patient-counsel@winston.com\>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I believe we should give the other parties and nonparties an opportunity to weigh in before we send anything else to the Court.

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



---

**From:** Rob Farquharson \<Rob.Farquharson@oag.texas.gov\>
**Sent:** Wednesday, March 26, 2025 1:09 PM
**To:** Logan, William \<WLogan@winston.com\>; 'WFG_DrCooper@willkie.com' \<WFG_DrCooper@willkie.com\>; 'avi.moshenberg@lmbusinesslaw.com' \<avi.moshenberg@lmbusinesslaw.com\>; David Shatto \<David.Shatto@oag.texas.gov\>; Kimberly Gdula \<Kimberly.Gdula@oag.texas.gov\>; Brianna Krominga \<Brianna.Krominga@oag.texas.gov\>; 'Sutker, Cory' \<Cory.Sutker@cooperscully.com\>; 'Cooper, Jackie'

<Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

If I missed them, I apologize, there was nobody other than Childrens' counsel, Dr. Lau's counsel, and myself in the courtroom. And the only folks on Zoom were two attorneys for Dr. Cooper and Mr. Shatto. The Court also asked if anybody was present for the Non-Party Patients and nobody said anything.

I don't believe that this captures the Court's oral orders, but I will include it in my email to the Court and note our disagreement.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 12:57 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Thanks Rob. Setting aside that none of these issues were noticed for the hearing this morning, we had an attorney present. Sorry we missed you. Proposed edits attached. Are there any different thoughts from the doctors' counsel or counsel for UTSW?

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*

**WINSTON & STRAWN** LLP

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:48 PM

**To:** Logan, William <WLogan@winston.com>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

My only objective with the written order is to capture what the Court already orally ordered this morning. I understand that you are likely not in agreement with the substance of the Court's order, but the question is only as to the form.

The Court opened the hearing for counsel to attend via Zoom, but you did not appear. Given that you were not present to hear the Court's orders, I find it difficult to understand what form objections you might have. Nevertheless, with that said, if you have suggested revisions to the form of the order, please send them.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 12:39 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Hi Rob,

It is not agreed. If we understand the order the Court is suggesting, it is that the agreed stay of productions for UTSW under the February 28 order (as modified on March 20) is lifted. It should not be written as a new order for production to UTSW.

Many thanks,
William

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600

D: +1 713-651-2766

F: +1 713-651-2700

Email | winston.com

*Pronouns: He, Him, His*



**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:36 PM
**To:** 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Logan, William <WLogan@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

All:

Please let me know if this order is agreed as to form.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

**From:** Rob Farquharson
**Sent:** Wednesday, March 26, 2025 12:34 PM
**To:** 'Amy Patterson' <apatterson@co.collin.tx.us>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

We have not discussed that. I will drop you off and open the floor.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Amy Patterson <apatterson@co.collin.tx.us>
**Sent:** Wednesday, March 26, 2025 12:26 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Can you confirm, is this agreed as to form?

*Thank you,*
*Amy Patterson*
Court Coordinator, 493ʳᵈ District Court
Ph#214-491-4870

**You MUST appear for your hearings unless the Court tells you otherwise.**

**Please send all scheduling request to 493@co.collin.tx.us for a faster response time.**

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:13 PM
**To:** Amy Patterson <apatterson@co.collin.tx.us>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Thank you, Ms. Patterson. Attached is the proposed order that the Court requested this morning. We will also be submitting it through e-file shortly.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Amy Patterson <apatterson@co.collin.tx.us>
**Sent:** Wednesday, March 26, 2025 10:18 AM
**To:** 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Subject:** 493-07676-2024 & 493-08026-2024
**Importance:** High

All – At today's sealing hearings, the Court broached in open Court the execution of the Agreed Order related to the representation of UTSW. The Court believes this resolves/moots a number of pending motions in this cause including Rule 12, Motion to Strike Intervention, etc. To keep the record clean, Judge Nowak would prefer an order memorializing this fact. As such, the Court directs the Parties/Non Parties to provide an Agreed Order memorializing the motions impacted and confirming the same are rendered moot by the Agreed Order.

In addition, we have not received from the Parties/Non Parties a proposed Order reflecting the Court's ruling on the Nonparty Patients Expedited Motion for Partial Stay, which was granted in part and denied in part. It seems likely the Parties/NonParties would desire a written order given the proceedings pending in the 15th Court. Do the Parties/NonParties anticipate providing one for the Court to sign which may be sent to the 15th Court of Appeals in connection with the mandamus proceeding?

Further, in light of Agreed Order stay of production by UTSW is lifted and the Court believes that UTSW, like Children's, would be subject to the Feb. 28 Order, as modified. The Court noted this at hearing today so that the Parties/NonParties may determine whether any additional steps are needed to ensure that you are pursuing one proceeding with the 15th Court of Appeals, instead of two, related to production issues. Please let us know if you need anything further from the Court to most efficiently move the proceedings with the 15th Court forward.

Lastly, at present, we have a hearing scheduled in these causes on April 16. Do the Parties/NonParties agree as to whether that hearing may proceed pending the 15th Court proceedings? Please advise.

*Thank you,*
*Amy Patterson*
Court Coordinator, 493rd District Court

Ph#214-491-4870

**<span style="color:red">You MUST appear for your hearings unless the Court tells you otherwise.</span>**

**Please send all scheduling request to 493@co.collin.tx.us for a faster response time.**

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# Exhibit B

# Rob Farquharson

**From:** Sutker, Cory <Cory.Sutker@cooperscully.com>
**Sent:** Thursday, March 27, 2025 2:25 PM
**To:** Rob Farquharson
**Cc:** Johnathan Stone; David Shatto; Pauline Sisson; Emily Samuels
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Rob –

I have confirmed that Children's does not have any visit logs.  Further, I did not understand the Court's order from last Friday to require the production of emails.  With respect to emails, the only order was for Children's and the State to meet and confer over search terms.



**Cory Sutker**

900 Jackson St. #100, Dallas, TX 75202
Direct: 214.712.9558 | Main: 214.712.9500 | Fax: 214.712.9540
Email: Cory.Sutker@cooperscully.com | www.cooperscully.com

This correspondence is for the named persons' use only, and it contains confidential or legally privileged information or both. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this correspondence in error, please immediately notify the sender and delete it from your system. You must not disclose, copy or rely on any part of this correspondence if you are not the intended recipient.

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Thursday, March 27, 2025 9:59 AM
**To:** Sutker, Cory <Cory.Sutker@cooperscully.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; David Shatto <David.Shatto@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>
**Subject:** FW: 493-07676-2024 & 493-08026-2024

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Cory:

Just so I am clear on your end, I don't read the Court's orders to include visit logs or emails. Are these items that you are planning to produce pursuant to the Collin County Court's orders?

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 5:04 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Sutker, Cory <Cory.Sutker@cooperscully.com>; Holland, Anika <AHolland@willkie.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Hi Patrick,

For clarification, when Rob mentions co-mingled records, he is referring to Mr. Walsh's prior confirmation that there are possibly some records (like visit logs) that may contain references to multiple patients. We also understand there could be electronic records, like emails, that might reference more than one patient. We have no reason to believe that the existence of records that reference multiple patients would be a HIPAA violation. Nonetheless, if your client confirms that there is a possibility that such records exist, it is obviously extraordinarily important to our clients. The dispute over that is already pending as part of the Nonparty Patients' requests for protection in the Dallas County Court and should be adjudicated there.

Thanks,
William

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 4:57 PM
**To:** Sutker, Cory <Cory.Sutker@cooperscully.com>; Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Mr. Todd:

I am sympathetic to your position, but I hope you can understand ours too. The Court made its order this morning fully aware of the fact that you had just entered into the case. On top of that, we have been seeking these records for more than two months and have already given UTSW extensions to comply.

With all of this said, Mr. Logan has suggested that he may be planning to file a mandamus based on his belief that UTSW patient records are somehow comingled amongst themselves. We are not aware of any basis for this claim, and indeed, if he is correct, UTSW may have bigger problems in terms of HIPAA.

If we agree to an extension, as an initial matter, can you confirm with your client and/or its former counsel whether UTSW's relevant patient records are either segregated by patient or commingled?

With this information, we may be able to work something out.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Sutker, Cory <Cory.Sutker@cooperscully.com>
**Sent:** Wednesday, March 26, 2025 4:35 PM
**To:** Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

I am not sure Children's has a say in this, but, to the extent it matters, we have no opposition



**Cory Sutker**

900 Jackson St. #100, Dallas, TX 75202
Direct: 214.712.9558 | Main: 214.712.9500 | Fax: 214.712.9540
Email: Cory.Sutker@cooperscully.com | www.cooperscully.com

This correspondence is for the named persons' use only, and it contains confidential or legally privileged information or both. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this correspondence in error, please immediately notify the sender and delete it from your system. You must not disclose, copy or rely on any part of this correspondence if you are not the intended recipient.

**From:** Holland, Anika <AHolland@willkie.com>
**Sent:** Wednesday, March 26, 2025 4:30:24 PM
**To:** Logan, William <WLogan@winston.com>; Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com <Jlascano@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; Sutker, Cory <Cory.Sutker@cooperscully.com>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Agreed (on behalf of Dr. Cooper).

**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 2:29 PM
**To:** Patrick Todd <Patrick.Todd@oag.texas.gov>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>; Jeff Lutz <Jeff.Lutz@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

**\*\*\* EXTERNAL EMAIL \*\*\***

For our part, we believe giving UTSW's counsel a week to get up to speed on the case before it decides how to proceed is appropriate and more than reasonable.

**From:** Patrick Todd <Patrick.Todd@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 4:09:16 PM
**To:** Logan, William <WLogan@winston.com>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika

4

<[AHolland@willkie.com](mailto:AHolland@willkie.com)>; [Jlascano@steptoe.com](mailto:Jlascano@steptoe.com) <[Jlascano@steptoe.com](mailto:Jlascano@steptoe.com)>; WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; 'avi.moshenberg@lmbusinesslaw.com' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Kimberly Gdula <[Kimberly.Gdula@oag.texas.gov](mailto:Kimberly.Gdula@oag.texas.gov)>; Brianna Krominga <[Brianna.Krominga@oag.texas.gov](mailto:Brianna.Krominga@oag.texas.gov)>; 'Sutker, Cory' <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Cooper, Jackie' <[Jackie.Cooper@cooperscully.com](mailto:Jackie.Cooper@cooperscully.com)>; 'awolf@steptoe.com' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; Newsome, Jervonne D. <[JNewsome@winston.com](mailto:JNewsome@winston.com)>; Martin Cohick <[Martin.Cohick@oag.texas.gov](mailto:Martin.Cohick@oag.texas.gov)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>; Jeff Lutz <[Jeff.Lutz@oag.texas.gov](mailto:Jeff.Lutz@oag.texas.gov)>

**Cc:** Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Amy Pletscher <[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>

**Subject:** RE: 493-07676-2024 & 493-08026-2024

Dear Counsel,

We (Martin and myself) were assigned to represent UTSW this morning. We were not afforded the opportunity to be at the hearing this morning and are still trying to get up to speed on what has happened so far in this case. We haven't been able to confer with our client yet or former counsel. We have also not been able to review the responsive records. As such, we cannot approve as to form the proposed order since we don't know what the court ordered at the hearing today.

We respectfully ask if the parties will agree to a one week delay to April 2, 2025, before UTSW is required to begin producing records to allow us to confer with our client, confer with former counsel, and review the records.

We would graciously appreciate extending us this professional courtesy.

Sincerely,

Patrick Todd



**Patrick Todd**
*Assistant Attorney General, Administrative Law Division*

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1660

---

**From:** Logan, William <[WLogan@winston.com](mailto:WLogan@winston.com)>
**Sent:** Wednesday, March 26, 2025 2:31 PM
**To:** Rob Farquharson <[Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)>; Holland, Anika <[AHolland@willkie.com](mailto:AHolland@willkie.com)>; [Jlascano@steptoe.com](mailto:Jlascano@steptoe.com); WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; 'avi.moshenberg@lmbusinesslaw.com' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Kimberly Gdula <[Kimberly.Gdula@oag.texas.gov](mailto:Kimberly.Gdula@oag.texas.gov)>; Brianna Krominga <[Brianna.Krominga@oag.texas.gov](mailto:Brianna.Krominga@oag.texas.gov)>; 'Sutker, Cory' <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Cooper, Jackie' <[Jackie.Cooper@cooperscully.com](mailto:Jackie.Cooper@cooperscully.com)>; 'awolf@steptoe.com' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; Newsome, Jervonne D. <[JNewsome@winston.com](mailto:JNewsome@winston.com)>; Martin Cohick <[Martin.Cohick@oag.texas.gov](mailto:Martin.Cohick@oag.texas.gov)>; Patrick Todd <[Patrick.Todd@oag.texas.gov](mailto:Patrick.Todd@oag.texas.gov)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>
**Cc:** Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Amy Pletscher

<[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Mr Walsh said so during one of our many conferences about productions in this matter.

While we're confirming things, can you please confirm service of all the unrepresented patients as required under Rule 205?

---

**From:** Rob Farquharson <[Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)>
**Sent:** Wednesday, March 26, 2025 2:29:12 PM
**To:** Logan, William <[WLogan@winston.com](mailto:WLogan@winston.com)>; Holland, Anika <[AHolland@willkie.com](mailto:AHolland@willkie.com)>; [Jlascano@steptoe.com](mailto:Jlascano@steptoe.com) <[Jlascano@steptoe.com](mailto:Jlascano@steptoe.com)>; WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; 'avi.moshenberg@lmbusinesslaw.com' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Kimberly Gdula <[Kimberly.Gdula@oag.texas.gov](mailto:Kimberly.Gdula@oag.texas.gov)>; Brianna Krominga <[Brianna.Krominga@oag.texas.gov](mailto:Brianna.Krominga@oag.texas.gov)>; 'Sutker, Cory' <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Cooper, Jackie' <[Jackie.Cooper@cooperscully.com](mailto:Jackie.Cooper@cooperscully.com)>; 'awolf@steptoe.com' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; Newsome, Jervonne D. <[JNewsome@winston.com](mailto:JNewsome@winston.com)>; Martin Cohick <[Martin.Cohick@oag.texas.gov](mailto:Martin.Cohick@oag.texas.gov)>; Patrick Todd <[Patrick.Todd@oag.texas.gov](mailto:Patrick.Todd@oag.texas.gov)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>
**Cc:** Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Amy Pletscher <[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I do not recall Mr. Walsh (or even Mr. Sutker) saying that. Was it something he said in court?



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <[WLogan@winston.com](mailto:WLogan@winston.com)>
**Sent:** Wednesday, March 26, 2025 2:27 PM
**To:** Rob Farquharson <[Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)>; Holland, Anika <[AHolland@willkie.com](mailto:AHolland@willkie.com)>; [Jlascano@steptoe.com](mailto:Jlascano@steptoe.com); WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; 'avi.moshenberg@lmbusinesslaw.com' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Kimberly Gdula <[Kimberly.Gdula@oag.texas.gov](mailto:Kimberly.Gdula@oag.texas.gov)>; Brianna Krominga <[Brianna.Krominga@oag.texas.gov](mailto:Brianna.Krominga@oag.texas.gov)>; 'Sutker, Cory' <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Cooper, Jackie' <[Jackie.Cooper@cooperscully.com](mailto:Jackie.Cooper@cooperscully.com)>; 'awolf@steptoe.com' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; Newsome, Jervonne D. <[JNewsome@winston.com](mailto:JNewsome@winston.com)>; Martin Cohick <[Martin.Cohick@oag.texas.gov](mailto:Martin.Cohick@oag.texas.gov)>; Patrick Todd <[Patrick.Todd@oag.texas.gov](mailto:Patrick.Todd@oag.texas.gov)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>
**Cc:** Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Amy Pletscher <[Amy.Pletscher@oag.texas.gov](mailto:Amy.Pletscher@oag.texas.gov)>; nonparty-patient-counsel <[nonparty-patient-counsel@winston.com](mailto:nonparty-patient-counsel@winston.com)>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Rob,

We're not going to relitigate the bases for our petition and moving to stay via email, but to be clear, our clients' records were ordered produced beginning on March 21. As to whether UTSW may have co-mingled documents, UTSW's prior counsel, David Walsh, confirmed it was possible co-mingled records exist. We believe resolving the extent of such records, and how they should be dealt with, are questions in the first instance for the Dallas County Court.

Thanks,
William

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 2:19:17 PM
**To:** Logan, William <WLogan@winston.com>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com <Jlascano@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

William:

My understanding of your emergency 15 COA filing (and its order, which was based purely on your allegations) was that the basis of your urgency was your allegation that Childrens' patient records are somehow comingled amongst themselves. Do you have a basis to claim that the same applies to UTSW's records?

The Court had already ordered these to be prepared and ready for production on 3/21.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 2:10 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Re: 493-07676-2024 & 493-08026-2024

Counsel for UTSW:

Would you please advise on your position regarding the draft proposed orders and the Court's oral order today? Does UTSW intend to begin producing documents despite the stay from the 15th Court of Appeals? We need to know so we can decide whether to seek further relief from that Court.

Thanks,
William

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 1:46:15 PM
**To:** Holland, Anika <AHolland@willkie.com>; Logan, William <WLogan@winston.com>; Jlascano@steptoe.com <Jlascano@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

They are on the chain: Patrick Todd and Martin Cohick.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

**From:** Holland, Anika <AHolland@willkie.com>
**Sent:** Wednesday, March 26, 2025 1:44 PM
**To:** Logan, William <WLogan@winston.com>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Rob—it doesn't look like UTSW's new counsel is on this thread either. Shouldn't they be a part of this conversation given that UTSW is the subject of this order? Or did you already get their agreement separately?

**Anika Holland**

**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 11:26 AM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

**\*\*\* EXTERNAL EMAIL \*\*\***

Rob, thank you for agreeing to add counsel for Dr. Lau. We should also confer on the Court's request for a position regarding whether the April 16 hearing should go forward. Given the stay from the 15th Court of Appeals, the Nonparty Patients' position is that it should be vacated.

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 1:23 PM
**To:** Holland, Anika <AHolland@willkie.com>; Jlascano@steptoe.com; Logan, William <WLogan@winston.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

No problem. But, to clarify, Mr. Wolf represents Dr. Lau and has been on all of the emails.

 Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Holland, Anika <AHolland@willkie.com>
**Sent:** Wednesday, March 26, 2025 1:15 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Jlascano@steptoe.com; Logan, William <WLogan@winston.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>; 'Legg, W. Henry' <wlegg@steptoe.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I am adding Dr. Lau's counsel to this thread. They were omitted earlier.

**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 11:14 AM
**To:** Logan, William <WLogan@winston.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

**\*\*\* EXTERNAL EMAIL \*\*\***

Sure. Please let us know by 2pm if there are any comments from Dr. Lau or Dr. Cooper's counsel.


**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 1:11 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

I believe we should give the other parties and nonparties an opportunity to weigh in before we send anything else to the Court.

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 1:09 PM
**To:** Logan, William <WLogan@winston.com>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

If I missed them, I apologize, there was nobody other than Childrens' counsel, Dr. Lau's counsel, and myself in the courtroom. And the only folks on Zoom were two attorneys for Dr. Cooper and Mr. Shatto. The Court also asked if anybody was present for the Non-Party Patients and nobody said anything.

I don't believe that this captures the Court's oral orders, but I will include it in my email to the Court and note our disagreement.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 12:57 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Thanks Rob. Setting aside that none of these issues were noticed for the hearing this morning, we had an attorney present. Sorry we missed you. Proposed edits attached. Are there any different thoughts from the doctors' counsel or counsel for UTSW?

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*



**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:48 PM
**To:** Logan, William <WLogan@winston.com>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher

<<Amy.Pletscher@oag.texas.gov>>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

My only objective with the written order is to capture what the Court already orally ordered this morning. I understand that you are likely not in agreement with the substance of the Court's order, but the question is only as to the form.

The Court opened the hearing for counsel to attend via Zoom, but you did not appear. Given that you were not present to hear the Court's orders, I find it difficult to understand what form objections you might have. Nevertheless, with that said, if you have suggested revisions to the form of the order, please send them.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, March 26, 2025 12:39 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Hi Rob,

It is not agreed. If we understand the order the Court is suggesting, it is that the agreed stay of productions for UTSW under the February 28 order (as modified on March 20) is lifted. It should not be written as a new order for production to UTSW.

Many thanks,
William

**William Logan**
**Associate Attorney**
Winston & Strawn LLP
T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700
Email | winston.com
*Pronouns: He, Him, His*

WINSTON
& STRAWN
LLP

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:36 PM

**To:** 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Logan, William <WLogan@winston.com>; Martin Cohick <Martin.Cohick@oag.texas.gov>; Patrick Todd <Patrick.Todd@oag.texas.gov>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

All:

Please let me know if this order is agreed as to form.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Rob Farquharson
**Sent:** Wednesday, March 26, 2025 12:34 PM
**To:** 'Amy Patterson' <apatterson@co.collin.tx.us>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

We have not discussed that. I will drop you off and open the floor.



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

---

**From:** Amy Patterson <apatterson@co.collin.tx.us>
**Sent:** Wednesday, March 26, 2025 12:26 PM
**To:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David

Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

Can you confirm, is this agreed as to form?


*Thank you,*
*Amy Patterson*
Court Coordinator, 493rd District Court
Ph#214-491-4870

**You MUST appear for your hearings unless the Court tells you otherwise.**

**Please send all scheduling request to 493@co.collin.tx.us for a faster response time.**

---

**From:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>
**Sent:** Wednesday, March 26, 2025 12:13 PM
**To:** Amy Patterson <apatterson@co.collin.tx.us>; 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Cc:** Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Abby Smith <Abby.Smith@oag.texas.gov>; Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Subject:** RE: 493-07676-2024 & 493-08026-2024

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Thank you, Ms. Patterson. Attached is the proposed order that the Court requested this morning. We will also be submitting it through e-file shortly.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

15

**From:** Amy Patterson <apatterson@co.collin.tx.us>
**Sent:** Wednesday, March 26, 2025 10:18 AM
**To:** 'WFG_DrCooper@willkie.com' <WFG_DrCooper@willkie.com>; 'avi.moshenberg@lmbusinesslaw.com' <avi.moshenberg@lmbusinesslaw.com>; Rob Farquharson <Rob.Farquharson@oag.texas.gov>; David Shatto <David.Shatto@oag.texas.gov>; Kimberly Gdula <Kimberly.Gdula@oag.texas.gov>; Brianna Krominga <Brianna.Krominga@oag.texas.gov>; 'Sutker, Cory' <Cory.Sutker@cooperscully.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'awolf@steptoe.com' <awolf@steptoe.com>; 'Cooper, Jackie' <Jackie.Cooper@cooperscully.com>; 'Newsome, Jervonne D.' <JNewsome@winston.com>; 'Logan, William' <WLogan@winston.com>; 'dwalsh@katxlaw.com' <dwalsh@katxlaw.com>
**Subject:** 493-07676-2024 & 493-08026-2024
**Importance:** High

All – At today's sealing hearings, the Court broached in open Court the execution of the Agreed Order related to the representation of UTSW. The Court believes this resolves/moots a number of pending motions in this cause including Rule 12, Motion to Strike Intervention, etc. To keep the record clean, Judge Nowak would prefer an order memorializing this fact. As such, the Court directs the Parties/Non Parties to provide an Agreed Order memorializing the motions impacted and confirming the same are rendered moot by the Agreed Order.

In addition, we have not received from the Parties/Non Parties a proposed Order reflecting the Court's ruling on the Nonparty Patients Expedited Motion for Partial Stay, which was granted in part and denied in part. It seems likely the Parties/NonParties would desire a written order given the proceedings pending in the 15th Court. Do the Parties/NonParties anticipate providing one for the Court to sign which may be sent to the 15th Court of Appeals in connection with the mandamus proceeding?

Further, in light of Agreed Order stay of production by UTSW is lifted and the Court believes that UTSW, like Children's, would be subject to the Feb. 28 Order, as modified. The Court noted this at hearing today so that the Parties/NonParties may determine whether any additional steps are needed to ensure that you are pursuing one proceeding with the 15th Court of Appeals, instead of two, related to production issues. Please let us know if you need anything further from the Court to most efficiently move the proceedings with the 15th Court forward.

Lastly, at present, we have a hearing scheduled in these causes on April 16. Do the Parties/NonParties agree as to whether that hearing may proceed pending the 15th Court proceedings? Please advise.

*Thank you,*
*Amy Patterson*
Court Coordinator, 493rd District Court
Ph#214-491-4870

**You MUST appear for your hearings unless the Court tells you otherwise.**

**Please send all scheduling request to 493@co.collin.tx.us for a faster response time.**

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# Exhibit C

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 493-07676-2024
TRIAL COURT CAUSE NO. 493-08026-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | 493RD JUDICIAL DISTRICT |
| | § | |
| MAY C. LAU, M.D., | § | |
| | § | |
| Defendant. | § | COLLIN COUNTY, TEXAS |

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | 493RD JUDICIAL DISTRICT |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| | § | |
| Defendant. | § | COLLIN COUNTY, TEXAS |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MOTION HEARING

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 20th day of March, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Christine Nowak, Judge presiding, held in McKinney, Collin County, Texas;

Proceedings reported by machine shorthand.

A P P E A R A N C E S

FOR THE PLAINTIFF, THE STATE OF TEXAS:

      MR. JOHNATHAN STONE
      (VIA ZOOM)
      SBOT: #24071779
      OFFICE OF THE ATTORNEY GENERAL
      PO Box 12548
      Austin, Texas 78711
      Phone: 512-936-2613
      Johnathan.Stone@oag.texas.gov

      MR. DAVID SHATTO
      SBOT: #24104114
      OFFICE OF THE ATTORNEY GENERAL
      PO Box 12548
      Austin, Texas 78711
      Phone: 512-936-2613
      David.shatto@oag.texas.gov

      MR. ROBERT FARQUHARSON
      SBOT: #24100550
      OFFICE OF THE ATTORNEY GENERAL
      PO Box 12548
      Austin, Texas 78711
      Phone: 512-936-2613
      David.shatto@oag.texas.gov

FOR THE DEFENDANT, MAY C. LAU, M.D.:

      MR. W. HENRY LEGG
      SBOT: #24116661
      STEPTOE, LLP
      717 Texas Street
      Suite 2800
      Houston, Texas 77002
      Phone: 713-221-2372
      Wlegg@steptoe.com

      MS. NICOLE LEBOEUF
      SBOT: #00791091
      LEBOEUF LAW, PLLC
      325 North Saint Paul Street
      Suite 3400
      Dallas, Texas 75201
      Phone: 214-626-9803
      Nicole@leboeuflaw.com

FOR THE DEFENDANT, M. BRETT COOPER, M.D.:

    MS. ANIKA HOLLAND
    (VIA ZOOM)
    CA Bar#336071
    WILLKIE FARR & GALLAGHER, LLP
    333 Bush Street
    Floor 34
    San Francisco, California 94104
    Phone: 415-858-7411
    Aholland@willkie.com

    MR. AVI MOSHENBERG
    (VIA ZOOM)
    SBOT: #24083532
    810 Travis Street
    Suite 2102 #838
    Houston, Texas 77002
    Phone: 832-280-5670
    Avi.moshenberg@lmbusinesslaw.com


FOR THE NONPARTY PATIENTS:

    MR. WILLIAM LOGAN
    SBOT: #24106214
    WINSTON & STRAWN, LLP
    800 Capitol Street
    Suite 2400
    Houston, Texas 77002
    713-651-2766
    Wlogan@winston.com

    MR. THANH D. NGUYEN
    SBOT: #24126931
    WINSTON & STRAWN, LLP
    800 Capitol Street
    Suite 2400
    Houston, Texas 77002
    713-651-2766
    TNguyen@winston.com

    MR. EVAN LEWIS
    SBOT: #24116670
    WINSTON & STRAWN, LLP
    800 Capitol Street
    Suite 2400
    Houston, Texas 77002
    713-651-2766
    Edlewis@winston.com

FOR THE CHILDREN'S HEALTH NONPARTY PATIENTS:

    MR. CORY M. SUTKER
    (VIA ZOOM)
    SBOT: #24037569
    COOPER & SCULLY, PC
    900 Jackson Street
    Suite 100
    Dallas, Texas 75202
    214-712-9500
    Cory.sutker@cooperscully.com


FOR THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER:

    MR. DAVID WALSH
    SBOT: #00791847
    KERSHAW ANDERSON, PLLC
    12400 Coit Road
    Suite 800
    Dallas, Texas 75251
    214-347-4993
    Dwalsh@katxlaw.com

    MR. PETER ANDERSON
    SBOT: #00793262
    KERSHAW ANDERSON, PLLC
    12400 Coit Road
    Suite 800
    Dallas, Texas 75251
    214-347-4993
    Panderson@katxlaw.com


FOR THE INTERVENOR, OFFICE OF THE ATTORNEY GENERAL:

    MS. BRIANNA KROMINGA
    SBOT: #24103252
    OFFICE OF THE ATTORNEY GENERAL
    12221 Merit Drive
    Suite 650
    Dallas, Texas 75251
    Phone: 214-290-8830
    Brianna.Krominga@oag.texas.gov

I N D E X

(MOTION HEARING)

3/20/25                                    Page   Vol

Appearances.................................. 2

Proceedings.................................  6

Court's Ruling.............................. 128

Reporter's Certificate...................... 141

PROCEEDINGS

THE COURT: At this time the Court calls Cause Number 493-07676-2024. This is the State of Texas versus Lau. As well, the Court calls 493-07676-2024 -- oh, gosh, I just read the same number. So sorry. It's 06026-2024, State of Texas versus Cooper. If I could have an appearance at this time on behalf of the State of Texas.

MR. FARQUHARSON: Judge, you have Rob Farquharson, David Shatto, and Johnathan Stone for the State.

THE COURT: Thank you. And appearance on behalf of Dr. Lau.

MR. LEGG: Henry Legg on behalf of Dr. Lau.

MS. LEBOEUF: Nicole LeBeouf.

THE COURT: Thank you. And appearance on behalf of Dr. Cooper.

MS. HOLLAND: Anika Holland on behalf of Dr. Cooper.

MR. MOSHENBERG: Avi Moshenberg on behalf of Dr. Cooper.

THE COURT: Thank you. And appearance at this time on behalf of the nonparty patients.

MR. LOGAN: William Logan from Winston & Strawn on behalf of the nonparty patients. And with me

today are Evan Lewis and Thanh Nguyen.

THE COURT: Thank you, everyone. And appearance on behalf of Children's.

MR. SUTKER: Cory Sutker, Your Honor, for Children's.

THE COURT: Thank you. And appearance on behalf of UT Southwestern.

MR. WALSH: David Walsh and Peter Anderson for UT Southwestern.

THE COURT: Thank you. And then we also have with us today on behalf of the AG's office. So if I can have an appearance at this time.

MS. KROMINGA: Yes, Your Honor. Brianna Krominga. Brianna Krominga, Your Honor.

THE COURT: You'll probably have to pull that one a little closer to you during the course of the hearing.

All right. I'm going to remind everybody here at the outset, acoustics in the courtroom are poor. And so we have made sure that everybody has their own dedicated microphone today for that purpose. Please make sure, whoever is speaking, that you are utilizing your microphone. And I will just ask for those persons that are with us via zoom, if you are not speaking, if you can ensure that you are muted so that we don't have

any interference here in the courtroom and the court reporter is able to adequately take a record.

We're set today on a number of motions. The Court is just going to memorialize those. The State's motion for protection. The State's Rule 11 motion, UT Southwestern's motion for protection, the nonparty patients' expedited motion for partial stay of protection and motion for protection regarding party discovery, and then as well, Children's motion for protective order.

The parties provided to the Court a list of each of those filings that they believed were necessary for the Court to review. The Court will just note a number of items the Court received this morning once it had already started its pretrial docket. So obviously I do my best to be prepared, but you can't expect miracles, and if I didn't get it before 8 o'clock a.m., I probably have not read it. Okay?

Okay. Just a couple of things related to venue, not the subject of any motions, but I think we need to cover this. We initially had the hearing on the motion to transfer venue back on February 26th of 2025. At that time I took those motions under advisement pending the venue discovery. I entered orders directing production of the venue discovery on February the 28th.

I further order direct in compliance was entered on March the 7th. There was a flurry of additional filings related to redactions which the Court addressed via docket entry on March the 19th.

At this time I'll ask UT Southwestern and Children's to each confirm production of the venue discovery has been completed and compliance with all of the Court's instructions.

Mr. Sutker.

MR. SUTKER: Yes, Your Honor. After the -- after receiving from Ms. Patterson the Court's docket entry for yesterday, we revised the redactions slightly and sent them out in three batches to the respective attorneys who were to get them.

THE COURT: Thank you. UT Southwestern.

MR. WALSH: We did as well, Your Honor. I just -- to clarify, though, that we only had records for Dr. Cooper that was responsive so we sent that to the State and Dr. Cooper's lawyers. We did not have anything for Dr. Lau's side of the case, which was reflected in the log we did a long time ago. We also filed that notice that we did that yesterday with the Court.

THE COURT: Thank you. The Court saw the notice. I'm appreciative of it. Again, I just wanted

it on the record.

Okay. So having confirmed production is complete, I'm just going to have all our respective interest holders confirm that they have, in fact, received it.

So the State?

MR. FARQUHARSON: Yes, Judge.

THE COURT: Lau?

MR. LEGG: We have received them.

THE COURT: Cooper?

MS. HOLLAND: Yes, Your Honor.

THE COURT: And nonparty patients?

MR. LOGAN: Yes, Your Honor.

THE COURT: All right. So at this time, having completed the venue discovery, I think it's proper for the Court to order as follows: I order the parties to supplement the venue motions that are existing. Those summary judgments should be filed on or before March the 28th, no more than ten pages. Thereafter, if the parties to desire to file a response to the opposing party's supplement, you may do so on or before April the 4th. The Court will render a ruling after review of the supplements and the responses thereto unless the parties are requesting additional oral argument on the venue issue.

Let me ask at this time, are the parties requesting an additional time to present oral argument? If you are, I'm going to be setting y'all for April the 7th at 9:00 a.m.  State?

MR. FARQUHARSON:  Subject to anything from Johnathan, no, I don't think so.

THE COURT:  Okay.  Lau?

MR. LEGG:  We'd like to set a hearing for oral argument, Your Honor.

THE COURT:  Okay.  Cooper?

MS. HOLLAND:  Yes, Your Honor, we'd like a hearing as well.

THE COURT:  In light of the fact that at least two of the parties would prefer to have additional oral argument, the Court hereby sets this matter for further hearing April the 7th at 9:00 a.m.  And I think that addresses everything that I needed to as it relates to venue.

I've already referenced if I received it after 8:00 a.m., I probably have not read it in its entirety.  I do want to ask some additional questions related to the Dallas proceedings.  I've asked repeatedly for the transcript.  My understanding is, is at present, no persons have received the transcript from the Dallas County court and that the court reporter has

not prepared that transcript. Is that a current, accurate statement of where we're at with that transcript, State?

MR. SHATTO: That's correct for the State, Your Honor.

THE COURT: Okay. Lau, do you believe that to be correct?

MR. LEGG: We believe that to be correct, too, Your Honor.

THE COURT: Cooper?

MS. HOLLAND: Yes, Your Honor.

THE COURT: And nonparty patients?

MR. LOGAN: Yes, Your Honor.

THE COURT: Okay. I was provided an advisory this morning regarding the status of the appellate proceedings that contained therein a statement of the Fifteenth Court of Appeals *per curiam* opinion. I'm just going to ask for all parties to confirm that they did receive the *per curiam* opinion by the Fifteenth Court and have had an opportunity to review because I anticipate it's part of what we're going to be discussing today. State?

MR. FARQUHARSON: Yes, Judge.

THE COURT: Lau?

MR. LEGG: Yes, Your Honor.

THE COURT: Cooper?

MS. HOLLAND: No, Your Honor, we have not received that.

THE COURT: Okay. If I can ask if one of the other counsel -- Lau, if you're able to provide a copy to Ms. Holland so she is able to review that in connection with today, I would be very appreciative.

Let me go ahead and ask, nonparty patients, have you also received a copy of that?

MR. LOGAN: We did. We also filed a response to the advisory.

THE COURT: Okay. I don't have a response to the advisory. It's not even something that I was aware we've received via e-mail. Did you provide that to the Court at any time?

MR. LOGAN: We filed it, Your Honor.

THE COURT: So I'll get it about 48 hours from now if all you did was file it. So did you provide Ms. Patterson a courtesy copy via e-mail?

MR. LOGAN: I have not, Your Honor.

THE COURT: Do you have a hard copy?

MR. LOGAN: I may, Your Honor.

THE COURT: Okay. If you do, I encourage you to proffer that to the Court because, otherwise, the Court will have zero access to anything you've said

until about 48 hours from now.

While he's looking for that, I believe it's probably most appropriate for us to begin with the Rule 12 motion to show authority. Is there any disagreements from anyone on that? After looking at totality of the motions that are set today, obviously the issues are very interrelated, but it seems the precursor to that is the Rule 12.

Mr. Walsh, do you concur?

MR. WALSH: I think that's a perfect starting point.

THE COURT: Okay. Then in connection with that, obviously the Court's had an opportunity to review the verified motion to show authority and as well the response thereto, so I'm going to go ahead and turn this over to counsel for the AG's office to present argument. And I hope y'all will understand, I have a lot of questions, and so if I interrupt you to ask questions, you know, I hope that you will understand it's really just in an effort for me to understand where you're coming from in connection with your position. And so just remember, keep that microphone pulled close, okay, and stay seated.

All right. Counsel.

MS. KROMINGA: Yes, Your Honor. Brianna

Krominga on behalf of the AG.

Before I proceed, just procedurally, yes, we are the movant, but it is a burden-shifting motion. So it might make sense for UT Southwestern to begin, but I will defer to your preference there, of course.

THE COURT: The Court prefers to hear from you as the movant. I am certainly aware of the burden shifting that goes along in connection with Rule 12, but I think as the proponent of the request, it's proper to hear from you first.

MS. KROMINGA: Absolutely, Your Honor. And we did file a reply, which we understand the Court would not have had the opportunity to review so --

THE COURT: To my knowledge, the Court has not received -- not even just hasn't had an opportunity to review, similarly to this reply over here, we have not received it, so.

MS. KROMINGA: I do have a courtesy file stamped -- I have a courtesy copy for the Court if you would like.

THE COURT: I would.

MS. KROMINGA: May I approach?

THE COURT: Yes, please. Thank you.

MS. KROMINGA: Yes, Your Honor.

Your Honor, to begin, the AG's interest

here is very simple, very straightforward. Under the Texas Constitution, our attorney general has a mandate to defend the rule of law. And so intervention in this case and the motion to show authority is simply because UT Southwestern did not comply with its statutory obligations under the Texas Government Code, namely, seeking permission by the attorney general and getting permission before retaining outside counsel.

THE COURT: Okay. So can I ask a couple questions? They did ask for authority; that authority was denied in February. Correct?

MS. KROMINGA: Yes, Your Honor.

THE COURT: Okay. So what is your understanding of the length of time it took the AG's office to respond to the request for counsel?

MS. KROMINGA: Yes, Your Honor. In the response from the nonparty, they stipulate that that was about 30 days. I have no reason to contradict that. So I would -- I would agree to that. However, importantly -- well, I guess it touches on few points, and I'm sure Your Honor is interested in them all. One of them is the language that they cited under the General Appropriations Act, specifically 16.01(c), which has a ten-day limitation there. Nothing that limitation -- first, the General Appropriations Act, as we have

briefed, it's not an enabling statute. It's an expenditure of funds, that's it. We have cited in our reply lots of case law which specifically says that nothing in an appropriations bill can modify specific law/existing law in this state such as government code. So regardless of what --

THE COURT: So what's the usual process? Because I'm sure UT Southwestern gets served with subpoenas all the time. So what is the usual process?

MS. KROMINGA: Yes. Exactly, Your Honor.

So the usual process is that an agency in the state of Texas or an individual sued in their official capacity, would submit a request for representation by the attorney general. If that request for representation was denied, then they would submit a request to retain outside counsel.

Now, you are correct, UT Southwestern does this all the time. Very familiar. And, in fact, usually, or what I have seen, is if they want to retain outside counsel because of complexities or an alleged conflict, they note that to the attorney general in their request for representation, requesting that it be denied, and that is -- my understanding, that's taken into consideration. I obviously do not make those determinations. But I have -- I have with me examples.

I don't know that UT Southwestern wants --

THE COURT: So let me make sure I understand. The usual process is, we make the request to the AG's office. If it's denied, as it was here, then they would make a second, subsequent request that says may we retain outside counsel.

MS. KROMINGA: So your understanding of the process is correct but not how it happened in this case. UT South --

THE COURT: No, I'm just asking in the general case. That's ordinarily how UT Southwestern would have gone about it.

MS. KROMINGA: Yes.

THE COURT: Okay. So timing-wise here, UT Southwestern makes the request. A significant period of time goes by, in excess of the ten days, and the deadline for UT Southwestern to respond to the subpoenas is continuing on. Y'all tell them no, and then they would be making a second request to you that says, can we retain outside counsel. Is that correct? Is that what you're saying should have happened?

MS. KROMINGA: Yes. They never requested representation.

THE COURT: That wasn't -- are you saying that's what should have happened next?

MS. KROMINGA: To be clear, it is not required that the request for representation is submitted first, but that is the process that is typical; that's what they do repeatedly.

THE COURT: Okay.

MS. KROMINGA: So yes, I would say should have --

THE COURT: So let's say they submit that request now. Let's say, okay, well, it's complex, there is lots of issues, and we need outside representation. So I think it's really clear that the gentleman associated with the State of Texas can't represent UT Southwestern in this case, so what would be our next step? Because it doesn't sound like you're saying UT Southwestern has to go without a lawyer.

MS. KROMINGA: No.

THE COURT: You're just saying, hey, we have to jump through these hurdles and these hoops.

MS. KROMINGA: Correct, Your Honor. We, as the AG's office, are statutorily -- are required to represent agencies in the state of Texas, or, if we elect not to, to either allow them to have outside counsel or follow the process that's outlined in the statute. So that would be addressed. They never requested our representation and --

THE COURT: Okay, but that's not any question. My question is: How is it going to be addressed? Let's say, okay, great, we all agree UT Southwestern has to have a lawyer. The time frame for these subpoenas to be responded to was close to expiration. We obviously have to preserve objections, we have to observe privileges. So if I was to say the current representation hasn't been blessed by, you know, the AG's office, what is our next step? Does it mean, hey, I have to shut down discovery as it relates to UT Southwestern entirely in this case until the AG's office approves their outside counsel?

MS. KROMINGA: I don't know that discovery would necessarily need to be shut down in its entirety.

THE COURT: Who would respond to the subpoenas on behalf of UT Southwestern?

MS. KROMINGA: Presumably their counsel. I just want to stipulate there are many divisions within the AG, so I -- I don't know who would -- who would take the case. It could be general litigation. It could be an administrative law division. You know, there are several divisions that cases are handled so I just can't necessarily speak for each division where it would be unique. So here, in this capacity, I can say that if they submitted a request for representation, that would

be answered. And I -- I don't think I -- the discovery has already occurred in this case, and we discussed that on the status conference, and -- and so I hope that better answers your question.

THE COURT: I don't know that it does, so -- and maybe it's because I'm having a disconnect with you. I'm trying to understand what the process is, okay? So my understanding is they made a request and it was denied. And so you're saying, hey, Judge, in the ordinary course, the next request would have come and said, okay, great, we would like to hire an outside lawyer and this is the outside lawyer. Am I hearing you correctly?

MS. KROMINGA: Yes.

THE COURT: Okay. In this instance, that request was not made to which the AG's office objects. You say, hey, you didn't do the next right thing, correct?

MS. KROMINGA: Well, and you did some -- you affirmatively did something in violation of State law. That's -- that's really the point there is that --

THE COURT: So is it the AG's position that UT Southwestern should have asserted no objections whatsoever to the subpoenas while it was waiting for the AG's office to respond? That's really what I'm -- I'm

trying to look at it from a practical perspective.

MS. KROMINGA: Right.

THE COURT: It doesn't sound like you're here saying UT Southwestern should be here unrepresented. You're saying there's hurdles and hoops that we have to jump through. Okay. And I hear you on that. But from a practical concern, I've got live discovery in this case. I have subpoenas that are out to UT Southwestern which have to be responded. And obviously, these involve medical records, so there are going to be some objections, some privileges that have to be asserted, and certainly the AG's office is not saying that those should not be made.

MS. KROMINGA: Absolutely not, Your Honor. We aren't saying that at all.

THE COURT: But without them being present in this case, who was supposed to make those by the deadline?

MS. KROMINGA: Well, our argument would be that it would have been the AG's office had they requested to be represented knowing there were deadlines, but they didn't.

THE COURT: Okay. And I guess my -- the date that you denied the request that they did make, when was that?

MR. FARQUHARSON: Judge, can I intervene here very briefly? I believe Johnathan has briefed this issue in our filings to the Court. I cannot speak for the attorney general's office, just the State, but I think Johnathan's muted, and he has briefed the issue.

MS. KROMINGA: Your Honor, I'll point back -- for purposes of your question, back to the response to UT Southwestern which says that it was denied on February 20th.

MR. STONE: Can you guys hear me?

THE COURT: We can, Mr. Stone.

MR. STONE: Oh. Your Honor, we briefed this in our response to UT Southwestern's privileges and objections and requests for protection. Under Rule 12, if you decide that Mr. Walsh lacks the authority to represent UT Southwestern and there is no one in court today that can stand up and represent UT Southwestern today, you are required under Rule 12 to strike his pleadings. So we move --

THE COURT: So then, Mr. Stone, answer my practical question, which is: If I strike his pleadings, does that mean that there are no objections whatsoever that were asserted to the subpoenas that were issued to UT Southwestern?

MR. STONE: Yes. Only privileges. They

can assert privileges later as they obtain documents. They can assert privileges under Rule 193. But objections are waived.

THE COURT: Okay. And here -- here is my struggle with that, okay? The rule affirmatively requires a response within ten business days. One was not provided. And so there is not a reasonable period of time for UT Southwestern to make those additional requests and to follow the hurdles that the AG's office wants them to file such that they have sufficient amount of time to file objections prior to the expiration of the time for them to assert objections with the service of the subpoena. There just simply was not with when y'all gave them the response.

And so, again, I'm looking at this from a practical perspective. I just am trying to find out what is the AG's endgame here? I am not going to find that UT Southwestern has waived all objections to these subpoenas because you didn't meet the time frame within the rule and, as a result, I cannot find that your delay takes away UT Southwestern's objections. I simply cannot do that.

And so because of that, we have two options today. Option one is you say, hey, the AG's office is going to have counsel for UT Southwestern, and so,

Judge, what we're asking for you to do is to stay all discovery involving UT Southwestern until we follow those hoops and hurdles and we get a lawyer who has proper authority before this Court. Or we say, hey, for the discovery that's already out the door, the motion to transfer venue discovery in roll one which we're going to be discussing, you know what, we would agree for purposes of that that UT Southwestern is properly represented. Now, we may find at a later date, after conference, that the representation transitions in a different way, but that's where we're at.

So my question to the AG's office is: Which is it? Do I -- are we staying all discovery today as it relates to UT Southwestern, or is the AG's office going to be take the position, Judge, we don't want to do that. We hear where you're coming from. Instead what we would like to do is to say, without waiving our other arguments, we want to permit Mr. Walsh to shepherd the venue discovery in roll one and then we will work with UT Southwestern to see whether or not Mr. Walsh stays on or whether we follow the hoops and hurdles and before any additional discovery happens from UT Southwestern after roll one, there is different counsel that comes in?

That's -- that is where we're at as far as

this Court is concerned. And I understand that having made those assertions, the State may need to huddle and discuss with Mr. Stone who is on Zoom how we want to go forward.

I don't think there's any case law whatsoever that says that -- let me try to find it -- that there's a waiver of the arguments that the AG's office is making by failure to meet the ten days. There's just no cases. I looked; there's not. In fact, I'll just note that the bulk of the motions that are presented to the Court are wholly devoid of any authority on all sides.

So y'all are really just here today saying, Judge, this is how we feel. And that's great. But I really like authority. And so I'm not going to find a waiver by them today of the arguments that they've made. The hoops and hurdles are there for a reason, but they had ten days to get you a response, and so for that reason I will not find that UT Southwestern has waived objections.

We're going to stand in recess for ten minutes so that y'all can talk about how you want to go forward with the alternatives that the Court has presented.

(Recess was taken)

THE COURT: All right. At this time we're going to go back on the record. We took a brief recess so that the AG's office had an opportunity to confer with her team in light of the Court's statement, how you desire to proceed. So, Counsel, at this time, if I can hear from you.

MS. KROMINGA: Yes, Your Honor.

Given the two options that the Court provided, the AG's office is prepared to say we would request a stay of the discovery, and the AG will assign someone to represent UT Southwestern in this matter.

THE COURT: And so I guess that takes us to you. I'm obviously not going to find that the objections are in any way waived, but I think probably you need to ask your client as to whether or not they are willing at this time to accept the AG's offer to have them be represented, knowing that I won't be striking any of the motions for protection or otherwise, and to transition that or whether or not they would ask you to stand on your argument that there is a conflict in connection with that and ask for you to urge that today at hearing.

MR. WALSH: Okay.

THE COURT: Okay. So we'll be off the record again.

MR. FARQUHARSON: Can I put something on the record very quickly?

THE COURT: Yes, you may.

MR. FARQUHARSON: Judge, I just want to clarify. The Court said that it gave the attorney general's office time to confer with its team. We would urge there is a distinction between the State and the attorney general.

THE COURT: I thought the AG's office was conferring with Mr. Stone in light of the fact that he did the briefing on the impact of the objections, if the Court were to remove or to not remove those, to inform her as to her decision.

MR. FARQUHARSON: So we have a position that is slightly modified from the attorney general's office. Our position is that a stay would be appropriate, a limited stay in terms of time would be appropriate for Dr. Cooper production given that that is what has been represented is the only thing that UT Southwestern has.

MR. WALSH: That was the only thing we have on venue discovery.

THE COURT: So I think what you're saying is there are patient records, but that was all you had on -- I'm not sure how that would be possible.

MR. WALSH: If I can explain. So the venue discovery came out and it was like, I don't know, four or five patients -- and I'm summarizing in very summary fashion -- four or five patients for each doctor and it was medical billing records or whatever. And so for the Lau patients on that list, UT had no record. Now, on the rolling --

THE COURT: On the broader list you have a bigger --

MR. WALSH: We have -- we have Lau records on that. And I believe it's Lau billing and medical records although I can't -- I don't think it's on every patient that's on the list, but we have Lau records.

THE COURT: There are some is what you're saying.

MR. WALSH: Correct.

THE COURT: Okay.

MR. FARQUHARSON: So I think that would just make our position that it needs to be limited in time to give the attorney general's office time to make -- do whatever they're going to do. We just don't want it to be an indefinite or --

THE COURT: That's not the Court's intention. I think what I'm trying to tell y'all is, hey, we took longer to get through the process than was

needed before the expiration of time to lodge any objections to the subpoenas would have come. Because even if they had put in what you're saying is the proper second request, we were still right up against the deadline. And so because of that, I'm not going to find that those objections are waived. I'm not going to at this time strike the motions for protection or otherwise. I'm going to leave them as a placeholder, and right now I'm going to ask counsel if you will talk with your client to find out whether or not their request is for you to argue conflict as you've asserted or whether or not they would ask that you work with the AG's office so that representation can be transitioned and then they will choose whether or not to pull the motions for protection down, amend them or otherwise.

MR. WALSH: One slight clarification after talking with my client at the break is that the normal process doesn't necessarily involve asking for the AG to represent the State entity because the State entity can say, hey, there's this, that, or the other and we can -- according to my client, we can request outside counsel from the get-go. So it's not like we skipped --

THE COURT: But it sounds like you can -- it's still a request, right? You still have to request to engage outside counsel? So there's still a request.

MR. WALSH: Correct.

THE COURT: So all I'm saying is y'all need to talk to each other, it sounds like, about is it going to be we request to obtain not AG's office but outside counsel until we work with you on who is that outside counsel that can be retained if it's not you. Is that what your client wants to do? Or do they want you to argue no, come hell or high water, we get to hire who we want, in which case we need to argue further?

MR. WALSH: Okay.

THE COURT: Okay. And you have a question.

MS. KROMINGA: Yes, Your Honor. I just wanted to put -- clarify on the record, given Your Honor's statement, that they made the request. We did not respond within the ten days and so, because of that, we are butting up against the time. I just want to put onto the record that there -- we are not asserting that it would have had to have been done, wait for a denial, and then request representation or that they had to do one before the other.

What we are simply stating is they had an avenue that entire time to get representation by the AG's office to respond to the subpoenas on their behalf and they chose not to, so it's a delay of their own making. That is our sole argument on that front.

THE COURT: And based upon the briefing, I believe y'all have a dispute regarding that. Okay? And so I'm not here at this juncture to resolve that dispute. I am merely saying, hey, it sounds like you're saying there's more hoops and hurdles and that you -- the AG's office now says that they will represent. And so I now need to hear from UT Southwestern as to how they want to go forward in connection with that request. And so I think that's where we are right now. Okay. Do you disagree?

MR. WALSH: No. And I, in fact, will go ask my client what they would like to do in that situation.

THE COURT: And I would actually encourage the two of y'all to confer before you call your client. That may inform, you know, the call with the client and what you will represent. So with that, we'll be standing in recess again.

(Recess was taken)

THE COURT: Counsel.

MR. WALSH: I wanted to summarize kind of some off-the-record stuff. I asked who it would be that would represent UT Southwestern, predicting that my client would care, and they -- well, I was told that it would be somebody from within the administrative law

division, which was not acceptable to my client, in addition to the very serious concerns about the conflict of issues [sic] issue, so they are going to decline the offer at this time.

THE COURT:  Okay.  So you've added the caveat "at this time."

MR. WALSH:  Well, I --

THE COURT:  And so is that because you don't know who?  If the AG's office was to tell you who, would that impact your client's decision?

MR. WALSH:  I seriously doubt that it would because they have serious concerns about the conflict issue.

THE COURT:  Okay.  All right.  Well, we're going to go ahead and continue on in connection with argument.  Notwithstanding the matter of the Court's ruling here today, I am going to find that I'm essentially granting an extension so that there is no waiver of any objections.  And so I'll go ahead and ask AG's office, in connection with that, if I can hear further from you.

You have represented at this time that the AG's office would take on the representation.  It appears, then, that in reality, the remaining argument we need to address relates to the alleged conflict in

the AG's office handling the representation in light of the fact that the State is the one advancing the claims in connection with this cause. So if I can hear from you in connection with that.

MS. KROMINGA: Yes, Your Honor.

So I want to be delicate in proceeding because it is our position that whether or not there's a perceived conflict of interest -- it's actually the interest position of the supreme court, and I have a copy of a case for you if you need it.

But in 1988, Chief Justice Wallace wrote an opinion on this and said that even if their belief -- there is belief to be a conflict of interest because the attorney general represents both sides of the V or multiple parties in a lawsuit, it's -- it's -- A, it's not a conflict unless the actual attorney itself is representing both sides which isn't -- in this case it's not an issue. And B, if it was, it's an issue that the legislature is making, and the legislature is the only one that can fix that.

So it wouldn't be -- it is our position that it's not an issue for the Court in terms of whether or not UT Southwestern -- Mr. Walsh has the authority to represent UT Southwestern. It's -- that conflict is not contemplated by the legislature. It was only

contemplated in the General Appropriations Act when it comes to expenditure of funds, but nowhere in that act -- A, it's not an enabling statute; but B, nowhere in the General Appropriations Act does it say that that would be a conflict for purposes of representation and retaining outside counsel just for expenditure of funds.

And so I don't know if that answers the Court's question, but we don't believe there is a conflict. It's the case law, which again is in our reply -- and the Court, unfortunately on our end, did not get the opportunity to review before this hearing -- but there is plenty of case law that says there is no -- there is no conflict when it's members of different divisions. There's no conflict when there's -- when it could be attorneys within the same division. And then after it's resolved, whether or not Mr. Walsh has the authority to represent UT Southwestern in this matter, then I could see, once appropriate counsel has been assigned engagement, you know, in what Chinese wall goes up or does not go up.

But what I could say right now is that it is a general practice of the Office of the Attorney General, but by default, I do not have access to matters or documents from other divisions. So I think that would address the concerns that are outlined in the

response. And certainly their -- the bulk of their response doesn't meet the Rule 12 burden.

The response argues that it does because retention of counsel was made and there's an affidavit from the client saying that they did retain Mr. Walsh. No one is disputing that. In fact, we wouldn't be here if we did dispute that.

The case law decided it's all about private parties, and UT Southwestern is an agency of the State, it's not a private party, so it has obligations under the government code that it has to follow. So that would not be sufficient to show authority in this case.

And then the remainder of the argument from our view is on this concern of the substance of the subpoenas, but again, the substance of the subpoenas don't modify the requirements under the government code. It has no bearing on the requirement to seek and get approval for outside counsel.

THE COURT: And if you have those cases, obviously, I haven't read your reply to the extent it addresses this issue, so that would be tremendously helpful. I'm going to segue for a second and state, I have a couple questions for y'all in connection with some of the arguments that were made.

One of the arguments made as it relates to

UT Southwestern throughout all of the filings is its perception and belief that the patients haven't been provided notice, and so I have just a couple questions, practical questions, related to that particular issue.

So, UT Southwestern, you say that you are, in fact, aware that some patients have not received notice, correct?

MR. WALSH: Based on what I've heard from other people.

THE COURT: And well -- okay. Who are these people?

MR. LOGAN: I'm one, Your Honor.

THE COURT: Okay. So how do you know that those patients have not received notice?

MR. WALSH: Because what Mr. Logan told me was that the State conceded that some of the patients don't have notice. Now, I -- look, and notices are concern --

THE COURT: Everybody, remember I can't hear you if you're standing. So I know both of you want to talk, but go ahead and grab a seat, okay?

So you're saying, hey, Judge, I've got some hearsay that the patients don't have notice. I myself don't have any independent knowledge. And here's why I'm asking. At this juncture, you have the master

patient list and you've got the PMP records, correct?

MR. WALSH: We do not have the PMP records.

THE COURT: Okay. So I guess I thought that those were also made available to the hospitals. Were they not?

MR. STONE: No, those were not provided to the hospitals. The PMP records were provided, I believe, to counsel for Lau and Cooper. Counsel for Lau and Cooper also have disclosures that has the contact information for all of the patients in this case.

THE COURT: And, Mr. Stone, that's going to be one of my questions in just a second, so just bear with me. So they don't have the PMP records, okay.

So one of the things I was going to ask is, hey, have y'all done a cross-reference so we can actually ascertain which of the patients you've got that you believe that there's an incorrect address, and you are telling me, Judge, I don't have the documents to do that.

MR. WALSH: Correct. And I would just add one other thing is, the subpoena came to us with, like, a protective order but nothing else showing that either under state law that they had been served with a -- the patients had been served with a subpoena under Rule 205 or notice. We just get this dumped in our lap and so we

-- the first thing we look at is have the patients been notified, is there a court order. We're looking for ways to see what -- how we can comply, and we didn't have anything at the time. And that's why our concern about notice arose.

THE COURT: Okay. So at this juncture, you are saying, hey, Judge, I do know there's a protective order. Is that a yes?

MR. WALSH: Yes, Your Honor. Sorry.

THE COURT: Okay. And you do know there's court orders?

MR. WALSH: Yes and no, but no court order that actually tells me produce record X, Y, and Z. There's the -- currently the collection order and the venue discovery order but nothing to produce record X yet, which is that's the -- again, going back to you entered the orders on the 28th that UT Southwestern wasn't present for that had the rolling tranches that then on our later hearing --

THE COURT: So you are aware of those records?

MR. WALSH: Correct. And --

THE COURT: Okay. Hold on.

State, y'all told me that you called every single one of the patients and you talked with those who

would speak with you. How many did you talk with?

MR. FARQUHARSON: Johnathan will be able to answer numbers better than I can.

THE COURT: Okay. Mr. Stone?

MR. STONE: Yeah. Yes, Your Honor. We called every single patient that we had contact information for. We left voicemails for them. Some of them would speak to us; some of them wouldn't speak to us.

THE COURT: How many is that that you left -- that you had contact information for?

MR. STONE: We have contact information for all 36, but I don't have at my fingertips right now the number that spoke -- we have a spreadsheet of the number that spoke with us, because we had to schedule follow-up calls and work around schedules. So there is -- we have some internal documentation that tracked it, when we called them. We also mailed them notice. We used the PMP addresses except for when we talked to some of the patients, if they had an updated address, and they were -- we told them, hey, this is the address we have for you, is that correct. And some of them said, oh, no, that's not the correct address, this is my correct address. So we would update it and then we put all of those addresses that were applicable in the disclosures

that we sent to Cooper and Lau -- counsel for Cooper and Lau.

THE COURT: Okay. And so then I'm going to come to counsel for Doctors Cooper and Lau. Y'all did receive the PMP records and updated addresses, correct?

MR. LEGG: Correct. We received the disclosures and the PMP, correct.

THE COURT: And you have the master list at this juncture?

MR. LEGG: Correct.

THE COURT: And you have not reached out to the State and said, hey, we think you have the wrong address for any of these folks?

MR. LEGG: To my knowledge, we have not.

THE COURT: Okay. State -- and so, Mr. Stone, let me ask you since you're speaking on this issue. I guess I -- and I apologize if I had misunderstood. Is there any objection to providing the PMP list to the hospitals so that they're able to identify to you whether or not there are any missed addresses?

MR. STONE: It would be easier if we, like, just gave them the addresses that we used as opposed to the PMP records, because remember, some of the PMP records --

THE COURT: I just am trying to figure out how do I get them those addresses so that the hospitals themselves can look and say, hey, you didn't have the right address for patient 5?

MR. STONE: I think that if the Court -- certainly if the Court ordered us to -- this is not something we're going to fight about at all. If you want us to provide it to the hospitals so that they can cross-reference it, we are totally comfortable with that. We even suggested renoticing everyone a couple of weeks ago and -- for the hospitals, on the hospitals' side, if that would ease their minds and they wanted to send out notices again to all of the patients. So we wouldn't have any objections if the Court wants us to do that.

THE COURT: Okay. Mr. Sutker, are you comfortable conferring with the State related to the addresses so we can identify if any of your patients, the addresses were sent to an incorrect address?

MR. SUTKER: Yeah. I think out of all the things that we are talking about, that may seem to be the easiest thing to do today.

THE COURT: Okay. So yes, you would agree to confer with the State following today's hearing for y'all to work together to identify any -- where the

addresses are incorrect. And then, Mr. Stone, you're saying, hey, Juge, we've got no problem, we'll just renotice so that they -- they do receive that notice. Is that correct?

MR. STONE: Yes, Your Honor, for the State, that's totally fine with us.

MR. SUTKER: And, Your Honor, the only modification just being all we can do is verify that what we have is the last known address as well but whether that's a correct address, I guess --

THE COURT: Well, I think that's one of the reasons that the law requires good faith or reasonable efforts. And I think so long as we've confirmed that we're sending it to the last known address, that the Court would feel confident that we are making those good faith, reasonable efforts.

Mr. Stone?

MR. STONE: Yeah, little caveat. Your Honor, this is very agreeable to us. The little caveat, though, is what happens if there's an address that we have wrong? Is Mr. Sutker going to give us the correct address or will he send out the notice? Logistically, who do you want to do it?

THE COURT: I think it's probably best for you to send it, but, Mr. Sutker, if you have a

different -- if you would prefer a different approach, certainly the Court is open to you saying, Judge, I think that it would be better if we sent the notice, I'm perfectly comfortable with y'all doing so. I just need for you to speak up.

MR. SUTKER: Yeah, I think it -- right as I sit here today, I would probably want to confer with my client as to what they feel comfortable doing, but I have no doubt that Mr. Stone and I can come to an agreement on whatever the end result is.

THE COURT: Okay. And how long do y'all need for that conference? What's reasonable?

MR. SUTKER: With my client, it shouldn't take very long. We can accomplish that next week. But it -- then it would also depend on volume, I guess, of people who need to be noticed because if it's a handful that --

THE COURT: I'm just talking about you and Mr. Stone's conference as to ascertain, hey, these are the folks that we had the incorrect addresses. I think that probably means the two of you need to schedule a call. It will probably take, I would assume, you know, 20, 30 minutes, if we're going through that small, limited list. So are y'all comfortable getting that done tomorrow?

MR. SUTKER: I'm still out of town in a conference tomorrow but I can try to see if --

THE COURT: Yeah, Mr. Walsh told me. You're, like, the keynote speaker or something.

MR. SUTKER: Not quite. And if I was, then I've disappointed a lot of people today. But sometime early next week for sure.

THE COURT: Okay. And, Mr. Stone, do you feel comfortable with that?

MR. STONE: Absolutely, Your Honor. It's only -- and it's only 15 patients, because 22 of them are already represented. So it's narrow. We're very comfortable. Early next week.

THE COURT: Great. Can you tell me real fast, Mr. Stone, what's the number of patients that we're looking at in connection with UT Southwestern before I hear from Mr. Walsh? That are not represented. Remind me.

MR. STONE: Oh, I -- I don't know that off the top of my head. I think they have 11 out of -- you know what? I think counsel for the represented parties may know this off the top of his head. I apologize, Your Honor.

MR. LOGAN: Your Honor, I know that we represent 22 out of the 37 that were originally

subpoenaed. I think they said it's down to 36 now, but...

THE COURT: Okay. So very few.

Did y'all talk amongst yourselves about the MTV, the motion to transfer venue discovery and what did we decide in connection with that? Did we make a decision? You said you were going to make a stipulation and then was that acceptable to the AG's office?

MS. KROMINGA: So I apologize. I think that we might have misunderstood that because, because UT Southwestern said they would not agree to the stay --

MR. WALSH: The representation.

MS. KROMINGA: The stay relating to the representation. That's my understanding, Your Honor, was that we would -- we would get a stipulation that the AG's office would represent UT Southwestern, we would ask for a stay so that procedure could be followed. They said no.

THE COURT: And so I just am trying to understand, right, when I get to the end of this, what are the Court's options. And so what is the AG's position if the Court ultimately -- as I've already said, hey, I'm not going to find that their objections are wholly waived, but we've already made the MTV discovery.

At present, if we were going to go forward with the orders that I've already got in place, there's documents scheduled to go out, you know, tomorrow morning related to the patient records. So I need to know what is the AG's office, you know, position with respect to that. Are you going to say, we are not going to argue that Mr. Walsh did not have authority to do that such that those records remain protected under the protective order, et cetera, and then if I were to grant, then we would wait until new counsel comes in to take up any of the remaining motions. I just need to know, we're zigging and zagging, what's everybody's respective positions.

MS. KROMINGA: Yes, Your Honor.

So the AG's position as it relates to the venue discovery that has already gone out is that we would not ask that that be clawed back or argue further that he didn't have the authority to produce that on behalf of UT Southwestern. I think we would want -- whether it's either striking the objections or allowing the appropriate counsel to a time period, maybe ten days, to lodge objections, take back or whatever they feel necessary because they would be appropriate counsel. I don't want to hamstring that, you know, division. That would be our position there. But I do

think that if we are -- if we are -- if it is our position that Mr. Walsh does not have the authority to represent UT Southwestern in this matter, then any substantive discovery would not be able to be produced.

THE COURT: Okay. All right. So then I think we're to you, Mr. Walsh, in connection with you're going to argue that there is a conflict, and so I would like to hear from you.

MS. KROMINGA: Would Your Honor like the case that I mentioned?

THE COURT: Please.

MS. KROMINGA: May I approach?

THE COURT: Please do.

MR. WALSH: Starting with, I -- Your Honor, I am in sort of a similar position to you in that I really haven't had time to delve into the reply in depth because it came in as I was leaving my office to come here. So the case that they cite, I don't know exactly what it is or what it says.

THE COURT: Do you have an extra copy?

MS. KROMINGA: I do.

MR. WALSH: And I won't be able to address that case until I have a chance to read it. But let me start with, the subpoenas here ask for information that could get UT Southwestern in trouble in a variety of

ways --

THE COURT: Can I for purposes of this discussion -- I'm going to interject just for one second. My understanding is that as it relates to Dr. Lau, there were two subpoenas served, and so I'm going to call it subpoena one, which relates to the patient records, and then subpoena two, which relates to the peer-review documents and the credentialing.

For purposes of today, I know in the Dr. Cooper case that they were served collectively. It was one document. Notwithstanding that, I think it is likely easier for just division of subject matter to refer to them as subpoena one related to the patient records and subpoena two related to the other documents that would be wholly UT Southwestern's and not impact the nonparty patients. So against that backdrop, if you can refer to them as subpoena one and two when you're making your representative arguments.

MR. WALSH: Sure. So subpoena one, the patient record, if I've got the numbers right, we don't have a problem -- assuming notice or court order or whatever satisfies or checks the box on HIPAA, we're ready to produce that. The problem we have in addition to subpoena one's issue about medical records is it's all documents -- as I recall, all documents about the

medical records which could include things that in-house counsel talked about among themselves. It could include things that might have gotten sent to the medical committee to evaluate the care of that patient. And so there is other things just -- because the word "document" is so much broader than just the patients' medical records that -- that we have concerns about the way that's phrased.

Subpoena two -- and so that's an institutional issue for UT Southwestern, at least on the privilege side, because they have to have the ability to have the medical committee go in and investigate things and be privileged or they're not going to be inclined to do that, and that's all designed to improve patient care at the end of the day. Whether you call it peer review or credentialing, it's kind of the same format. If somebody got in trouble hypothetically because of a patient file and it ended up in credentialing, we would say that the credentialing committee privilege would apply to that because -- or at least that aspect of it because that part -- that part is related to the credentialing aspect even though it's about this one patient.

So again, the broad phrase of documents is what has us concerned with subpoena one. And that's our

institutional concern because as an institution we have to have the free flow of discussion or free ability to investigate or people aren't going to talk to us or people aren't going to get assigned to do things in a medical peer review or a medical committee.

THE COURT: Is that concern still present as the Court has proposed that roll one would occur?

MR. WALSH: No.

THE COURT: Okay.

MR. WALSH: Because roll one was limited to patient records. And so that -- again, setting aside the HIPAA concern that we could get theoretically an Office for Civil Rights investigation from the federal government, which, you know, institutions are fined hundreds of thousands of dollars and millions of dollars for violations and we -- we want to avoid that because, you know, that's a large sum and it's also a black eye for us that could have adverse consequences otherwise, like losing healthcare contracts with insurance companies or federal payers, that we would be worried about. And so --

THE COURT: What's your continued concern under HIPAA in light of the fact that we've entered the protective order? Doesn't that satisfy 45 CFR 164.512(e)(2)(B)?

MR. WALSH: Well, again, not knowing all that went down before us, I think I'm more satisfied with -- with that, but I'm also more satisfied what I anticipate is going to be the Court order, which is the first and the grandiose exception of them all, if there is a court ordering me to do something, I got to do it, and that's from -- Peter and I represent a bunch of healthcare providers.

And so that's the way that they all feel comfortable producing records, either with a consent form from the patient or with a court order to do it, just because the HIPAA police, as we call them, don't -- don't really object if you do something pursuant to a court order or if you have a consent from the patient. And so the -- whether the protective order sufficiently covers the concerns in HIPAA is then we have to evaluate each and every protective order to make sure it complies, and that's the difficulty.

I don't -- what I envision is going to happen at the end of this hearing, I don't think -- I think the confidentiality order plus the Court's order would be sufficient to assuage UT Southwestern's concern about production of the first roll of records whenever you would order them. I would say, tomorrow morning, it was the first time I ever heard tomorrow morning as

opposed to tomorrow. That's the first time I heard that, today.

So I know my office is furiously redacting records to make it comply with your order, and there are some questions I have about things about that that maybe Mr. Stone and I can visit with you in camera, but we're trying to fast and furiously, since I was only hired on the 1st and I've been dealing with a lot of other things in this case, trying to come up with ways to comply with HIPAA.

And you know, we look at it -- one other thing just to kind of tie this back to the conflict is, you know, from a patient's perspective, if the person that's requesting the records is the person making the decision about whether the records should be redacted or protected in some fashion, whether the AG has a Chinese wall, that just doesn't seem right and that's -- that's the problem under the ethical rules about that. And you know --

THE COURT: Does she have any authority? Again, so that -- I mean, that's really where I'm at. That's where I'm at on all of these things. You know, you made the argument in the motion, oh, well, they didn't do the ten days so it's waived. Well, the only case you cite actually said waiver is not the right

remedy, staying the case is, which is what I'm proposing to do.

So, you know, here you're saying, well, all we're trying to do is respond to subpoenas, and that's proper, but we don't have any case law that says any court has said responding to a subpoena is a proper way around this particular rule. And you're arguing it's a conflict, but again, there is no cases that present this circumstance.

MR. WALSH: There's no cases at all on this circumstances, Your Honor, and so that's why we have to go back to the statute.

THE COURT: Well, and the State just said there is. So maybe one of the things we'll need to do is to take a break and for all of us to review so you can address this case, and I would give you the benefit of having oral argument on it. Because I truly think, at present, with the Court having stayed essentially and preserving all of UT Southwestern's objections, we're down to the conflict issue. And is -- does the conflict issue have merit or does it not? And none of the cases you cite are on point for the factual scenario where we're at, and that's really all I'm looking for, what does the authority say that I'm supposed to do. I prefer not to just flail about in the dark if there's

authority that's out there. And if it's an issue of first impression, then great, I'm happy to do it, but I want us to all be confident that it is. And the State is -- excuse me -- the AG's office is saying it's not an issue of first impression.

MS. KROMINGA: And, Your Honor, if I may. I just -- I want to be clear because there was mention that this is unique and there is no case. From our perspective, this happens all the time and it's not unique. And so we have cited in our reply several, albeit trial court, cases where this is common, but UT Southwestern is a party to one of those. And in one of the cases that we cited, it's not -- I will admit that it's not on the opposite side of the V but they are -- they have differing objectives and they are both defendants in Compass Group USA, Inc. versus Ken Paxton in his official capacity as attorney general of the State of Texas and the University of Texas Southwestern Medical Center in the 44th District Court of Travis County.

And there, Paxton was represented by the administrative law division, and UT Southwestern was represented by the general litigation division. So this is -- not only is it not novel to our office, it's not novel to UT Southwestern. So I do have a copy of the

supreme court case and which I said that I --

THE COURT: Are you talking about the *Public Utility Commission* case, or you're talking about the one that you just referenced?

MS. KROMINGA: No, Your Honor. *Public Utility versus Cofer* that I can --

THE COURT: If you'll proffer that to opposing.

MR. WALSH: So if you're ready, Your Honor.

THE COURT: I'm ready.

MR. WALSH: I'm going to have to study that case in a minute, and I appreciate the opportunity to look at it and talk to you about it.

I would add that -- so there's the -- the conflict that we have been generally talking about, which is not what I view as the conflict in this sort of scenario because it's the -- it's not the scenario -- it's typically not the scenario where the State as the plaintiff is traipsing through the defendant's employee files, whatever they may be, or e-mails with their employer, which is what is kind of would be happening if there was State representation.

And then the second thing is that we haven't even talked about is, 16.01(h), which we attached to -- I think everybody's attached to -- this

is the budget -- part of the budget thing. So on H, the legislature says, If a state governmental entity requests attorney general to take legal action against another -- I'm sorry, I'm reading G. I'm sorry. Let me start over.

If the attorney general initiates legal action against another state governmental entity on behalf of the attorney general rather than another governmental entity, the legislature determines that conflict of interest exists and that the State governmental entity against which the attorney general takes action may expend appropriate monies for outside legal counsel, dot, dot, dot, without prior approval or consent of the attorney general. And from our view, the subpoenas, while ordinarily, you know, they come with -- even from the AG, they come with consent or they come with whatever that makes us satisfied that these subpoenas are different as we explained in our papers because --

THE COURT: Then why did you ask for approval in the first place? If they're different and you're taking the position, hey, we didn't need approval, why did you ask for it?

MR. WALSH: Well, because we had -- we had insight about that the subpoenas were coming before the

subpoenas hit. So the subpoenas were served -- well, they tried to serve the subpoenas on UT Southwestern healthcare foundation, or whatever entity that they tried to serve, at CT Corporation. And so we knew subpoenas were coming, and that's when we made our request for outside counsel. We didn't actually get served with the actual subpoenas until later on down the road when we actually saw what they were.

And so we requested outside counsel -- again, because it's a sensitive issue involving our employees, we were concerned about the conflict issue, and then it was only cemented when we got it. And then other things have happened since this case has happened. The attorney general, in his own name, has intervened in the lawsuit and wants a declaratory judgment against UT Southwestern.

The attorney -- or the State, which I'll talk about in a second, the State has moved to compel -- or for sanctions in response to our motion for protection, which my motion for protection is very limited about preserving their objections, not trying to get heard the line-by-line of the objections, but their response treats it like a motion to compel and seeks sanctions against UT Southwestern and me. But that's -- that shows the problem of how the State is taking action

against them. And remember, in H, it's when an agency of the State, not the State, and so that's why the -- this is in the attorney general's own name.

And I will add two other little bits about this. The -- if we look to the DTPA, the DTPA, the legislature gave the consumer products finance -- consumer protection division -- sorry, it slipped me. The DBA under 1747 gives the consumer protection division of the AG the ability to bring suit, quote, on behalf of the State for violations of the DTPA.

The statute that is the first cause of action here, doesn't have that on behalf of the State. It delegates to the attorney general to bring suits for violation of this, this -- the anti-trans care bill. And so my argument is if you just compare the two statutes, the anti-trans care bill is the attorney general bringing a lawsuit in his own name because he's not told to bring it on behalf of the State like he is in the DTPA.

And so while that gets blended around in this case because they have two -- or three claims, two DTPA violations, as I understand it, and the violation of State law in the trans bill, that -- there is at least the attorney general, by issuing the -- by issuing the subpoenas in the trans care litigation, by -- by

taking action of the declaratory judgment, by seeking to compel records from UT Southwestern, that is, in essence, the conflict of interest that the legislature preordained that existed now. That's why I think that we're at that point of that's the conflict.

THE COURT: Any additional response, Counsel?

MS. KROMINGA: Yes, Your Honor, I want to clarify.

So a good chunk at the beginning of that argument was spent on the substance of the subpoenas and protection and this, that, and the other thing and --

THE COURT: And I don't need you to address that. I think that's a separate issue and I agree.

MS. KROMINGA: Okay. Secondly, to address the utility of Section 16.01(h) of the General Appropriations Act, it does not apply in this case. Because what 16.01(h) says is that the attorney general initiates legal action against another state governmental entity on behalf of the attorney general rather than another state governmental entity.

So the first issue here is that the subpoenas in this case were issued on behalf -- or I apologize -- not issued on behalf of the attorney general. They were issued on behalf of the State of

Texas by its counsel, the consumer protection division --

THE COURT: So I think, if I'm not misunderstanding, Counsel, is your argument the only person who is authorized to bring the claims under the laws at issue here, not the DTPA, but what you are calling the anti-trans -- I'm only using your verbiage --

MR. WALSH: And I don't know that I would describe --

THE COURT: -- and it must be the AG's office? Is that what your position is?

MR. WALSH: Correct. And one other little snippet is, under H, it's a -- it's the AG bringing action against a state entity -- a state agency other than a state agency bringing an action against another state agency.

So the conflict there is that the legislature says doesn't exist is when one state agency takes action against another state agency, so -- as my client kind of explained it. And so say the Texas Funeral Board has a problem with UT Southwestern and brings a claim. It's okay in that scenario for AG representation and AG representation in theory. I'm not saying that that's a -- that that's it. But in theory,

that's not a conflict because that's two agencies slugging it out. We can deal with that.

What this is talking about is when the State or the AG on his own behalf brings an action, and that's what I'm saying happened here, is the AG has brought an action and that's what we're left with.

MS. KROMINGA: Right. And we would just point the Court back to the express language of 16(h) -- 01(h), which says the -- on behalf of the attorney general, which did not happen in this case. And so to address the point about the non-DTPA claim that was brought -- again, I'm not involved in the merits, but what I do know is that even if the Court were to accept that argument, which we don't agree that that statute, which is the Texas Health and Safety Code 161.706, we would not argue that that -- that limits a cause of action only to the attorney general to bring.

However, if the Court wanted to follow that logic, 16.01(h) still would not apply in this motion because 16.01(h) says that if the legislature's determined a conflict under the -- an example that was given by
Mr. Walsh, which, again, we would agree the language doesn't support, but even if. Even if there is a conflict, even if they couldn't bring that, what the

language of H says is that the agency does not have to seek approval by the attorney general to disseminate funds. It does not -- there is nothing in H or 16.01 about retention of counsel. And specifically the case law says that the language in the appropriations bill or an act cannot modify the language of a specific law. So the Texas Government Code Section 402.0212 still has to be complied with irrespective of this 16.01(h). It does not modify that requirement, and, therefore, UT Southwestern did not have authority to retain Mr. Walsh.

THE COURT: So I think I need to provide counsel an opportunity to review the case that you've provided so that he can respond and the Court has the benefit of the argument. Obviously I've not read the reply either, and so I'm going to give you an opportunity to place any arguments you have related to that case on the record.

MR. WALSH: Okay. Do you want to go off the record now, or do you want to deal with something else while I read the case and Mr. Anderson pays attention? Whatever is efficient for you.

THE COURT: I would like to deal with other things. We're going to talk about whether or not we can do that. But I want to provide you an opportunity, okay?

MR. WALSH: Thank you, Your Honor.

THE COURT: So we're going to go ahead and go off the record just for a second.

(Discussion off the record)

THE COURT: At this time we're going to be back on the record. We're going to stand down on hearing any further regarding the motion to show authority until such time as we get some additional information from the AG's office and UT Southwestern has an opportunity to review the case provided by the AG's office.

So we're going to go ahead and turn at this time to the remaining motions. The State's emergency motion for protection, the nonparty patients' verified expedited motion to stay production from the hospital systems, and then as well, let's see, I've got UT Southwestern's motion for protection and then Children's motion for protective order, and I think that takes all of it. Obviously, they're all so interrelated, I'm not sure that it makes more sense to start with one versus the other.

So I think we'll just go round-robin, which means, State, we'll begin with you in connection with the motion for protection. I would just ask, after you argue the motion for protection that you've

affirmatively asserted, if you can go ahead and kind of cover for the Court the arguments you make in response to the other motions that we're going to hear on and then we'll go from there to UT Southwestern, to the nonparty patients to the extent that everybody wants to argue. Okay?

MR. FARQUHARSON: You are asking for our response to the -- to Children's and UT Southwestern's?

THE COURT: Basically I want you to go ahead and present all your arguments and then we're going to round-robin this, okay? Everybody will get a chance, and then we'll come back to you and you can make any additional points.

MR. FARQUHARSON: If it's okay with the Court, what I will do is I will start off with our motion for protection and then I will defer to Mr. Stone to address the other arguments.

THE COURT: That sounds great.

MR. WALSH: Can I ask a question?

My motion for protection isn't the line-by-line response I've got, so I don't know that we need to deal with that until the Rule 12 is decided.

THE COURT: I was just saying it's the other motions that the Court has to address, and I would like, to the extent they have arguments, to hear what

they are.

MR. WALSH: Okay.

MR. FARQUHARSON: May I continue?

THE COURT: Please.

MR. FARQUHARSON: Thank you, Judge.

So we believe that protection is appropriate because what we have seen is that -- well, number one, we have a -- we have a, as we mentioned before, plea to the jurisdiction in Dallas County and a plea in abatement in Dallas County that was initially with respect to Lau. It is now with respect to both Dr. Lau and Dr. Cooper. The Dr. Cooper -- so Dr. Lau, again, last time --

THE COURT: Have y'all filed or requested transfer in either of those cases or only a plea in abatement?

MR. FARQUHARSON: When you say transfer, within Dallas County or to transfer everything here?

THE COURT: Within Dallas County to transfer here.

MR. FARQUHARSON: No, we have not filed a motion to transfer venue.

THE COURT: Okay.

MR. FARQUHARSON: With respect to Dr. Lau, the Court heard those. We -- we appealed the plea to

the jurisdiction. And I think that it demonstrates the problem and it demonstrates why we asked for protection, is that on February 28th when we were here, the Court explicitly -- and I looked back at the February 28th transcript -- the Court explicitly said, "I'm ordering production on March 11th because I understand there is a hearing on March 12th in Dallas County."

What the nonparties did with that is they leapfrogged this Court and they jumped -- they called the Dallas County court, said how quickly can we get this heard, and they got it heard on March 6th. That was 11 days before we even needed to file an answer in that lawsuit. So again, we ended up with two Dallas County courts; now we have the court of appeals involved.

What is happening is it is undermining the entire purpose of sovereign immunity. The entire purpose of sovereign immunity is so the State's resources cannot be dragged thin, and that is what they are doing. They are dragging us thin. The real issue has become that substantively, the relief that they seek is being -- this Court has already given the nonparty patients the widest latitude of reasonable relief.

This is a case that is inherently about medical records. Like, there is no world where a

reasonable -- reasonable relief is no medical records whatsoever. The most reasonable relief to them is they get an opportunity to review, they get an opportunity to redact, and then they get an opportunity to submit for an in-camera inspection. This Court has already given that. So why are we -- I mean, literally the only other issue is that in Dallas County they are asking a complete stop. So it's -- the two motivations are a complete stop and a different judge. That's really what it boils down to.

And so I -- we believe that our plea to the jurisdiction and our plea in abatement are very, very strong. We have -- I believe the Court has our briefing in Dallas County on those issues, but I want to advocate because it was a -- we added it to our plea to the jurisdiction with respect to Dr. Cooper. That case is *Nazari v. State*. The citation to that is 497 S.W.3d 169.

What *Nazari v. State* says is that when we are pursuing an enforcement -- when we are pursuing an enforcement action for penalties, the state is not waiving its sovereign immunity. So even in this case, we have not waived our sovereign immunity. We have not waived our sovereign immunity in Dallas. The cases that they are relying on are cases about monetary damages,

where the State is in -- is in a lawsuit and it is seeking affirmative relief and monetary damages. The monetary damages and penalties for enforcement actions are two very different things. We have not opened ourselves up as general litigants, and so we retain sovereign immunity both in Collin County and Dallas County --

THE COURT: Okay. I'm going to stop you just for a second because you're going into all the jurisdictional issues, and one of the things you assert in your motion is this is the court of dominant jurisdiction. Certainly this is the court where the underlying litigation is pending, and as a result, I get to see all facets of the case as opposed to just slivers or pieces.

The federal rules have an expressed provision in their subpoena rules that deals with this. So, you know, Rule 45(f) says, hey, if you've got issuing court and you've got compliance court, what the proper thing is to do is to have the compliance court transfer it to the issuing court. And you can do that one of two ways. You can either have the party who filed a motion for protection or to quash the subpoena agree, or you can ask the court itself to do it, which is why I asked. You don't cite any cases related to --

surely this is not the first time that there has been a conflict between the issuing court and the court where the subpoena was served.

I didn't -- I wasn't able to and didn't have sufficient time to do that research on my own, but -- so that's what I'm asking. I mean, have you found courts that have dealt with this issue before? You know, Rule 45 says, hey, if it's impacting the underlying litigation, yes, that's a proper time to transfer. But are there any Texas cases that have said, hey, Judge Nowak, the proper thing for you to do is to look to the federal rules and how they've handled these conflicts; or, hey, this is how other courts have handled it? And you haven't given me any of that.

MR. FARQUHARSON: And, Judge, I want to -- I want to -- first of all, I want to apologize. I want to apologize for that. That goes back to the need for protection and us being stretched thin. We are now litigating this case in three different venues --

THE COURT: I know.

MR. FARQUHARSON: -- and we have other docket, so unfortunately, Johnathan and I had an evidentiary hearing earlier this week. That stay got extended an extra day as well. That's not an excuse, but that -- but I wish I had given you more extensive

briefing on the point.

Our motion for protection is not an ask that anything -- that the nonparty patients are arguing be waived. It is simply that it be consolidated. We want them to have their day in court, but we think it is appropriate for that day in court to be in this court, it sounds like consistent with the federal rule.

THE COURT: Okay. And so let me segue just for a second. Nonparty patients, I assume I already know the answer but I have to ask. You know, Rule 45 says, hey, if you've got two different places and it is impacting litigation, the proper thing to do is to say, hey, will you agree to transfer, and then if not, to file a motion to transfer.

Are you aware of any authority regarding, one, how Texas courts treat where there's this conflict like we have here? I didn't see any in connection with your expedited motion to stay production, so I'm just asking. Do you -- are you aware of any authority of how Texas state courts have handled this kind of conflict?

MR. LOGAN: Your Honor, the authority that we have about how these conflicts get handled the best is probably *In Re: Reed*, which we cited. I have a copy highlighted for the Court if you would like.

THE COURT: Do you have a copy for opposing

counsel?

MR. LOGAN: Yes.

THE COURT: Where did you cite *In Re: Reed?* I saw *In Re: Caruso* and I saw Rule 176.

MR. LOGAN: It may be in one of our supplements.

THE COURT: Let me look.

MR. LOGAN: Or it may be in our motion to stay.

THE COURT: I don't see it in either of the supplements. Can you just -- I read a lot of cases to get ready, so I would like to know which -- which one is it cited in.

MR. LOGAN: Your Honor, it may not have been in those two. It was in response to the advisory file. I didn't provide a copy of it to Ms. Patterson.

THE COURT: So the Court and nobody has received it, okay.

All right. So I'll go ahead and hear from you. So my initial question was: Would you agree for the protection to come up here so that we're not fighting on three fronts? I assume if we did that, that also resolves the appeal as well because everything would be here in this court. So I mean, the query that we have to ask is: Would the nonparty patients agree

for this Court to take up the motions for protection that you filed before now two Dallas courts so that we can streamline the case, reduce the cost and expense?

MR. LOGAN: Well, to start, the case in Dallas was transferred to one court, so they're all pending before the 95th so it's one court.

THE COURT: When did that happen?

MR. NGUYEN: Last Monday.

MR. LOGAN: Last Monday.

THE COURT: Okay. And is everybody aware of that?

MR. FARQUHARSON: Is there an order?

MR. NGUYEN: Yes.

MR. LOGAN: I have not seen an order.

MR. NGUYEN: The Dallas County court doesn't give notice of orders when the court issues paper orders, and so you just have to refresh the docket every day intermittently hoping that something new comes up. And so we just happened to see it.

MR. FARQUHARSON: I will look.

THE COURT: Okay. Sounds great. So great. Are we with Judge Purdy or Judge Parker?

MR. LOGAN: Judge Purdy.

THE COURT: Okay. And so we're in one Dallas court and we're in one appeals court. If we're

here in this court, that takes out two courts. So do y'all agree or do you not?

MR. LOGAN: No, Your Honor, our patients aren't going to waive their right to proceed where their subpoena was served. And one small clarification, too, is even in the federal rules, it says that's only appropriate in exceptional circumstances.

THE COURT: And the extraordinary circumstances, because I did a lot of research, say where there is creating a conflict between the underlying litigation and the court, which undeniably at this juncture it's creating conflict because we're running this case, we're running the Dallas case, and we're running the appeals case, which is costing everybody lots of time and lots of money. And to your argument, you're saying it's shutting down discovery entirely in this case. So I -- I think it's probably justified under the exceptional circumstances in the federal rules, but your answer is no, we would not agree?

MR. LOGAN: No, we would not. And, you know, just to clarify on those points. We didn't file an interlocutory appeal with the court of appeals. The State did that. It made a decision that its priority was to make sovereign immunity --

THE COURT: Wouldn't the State withdraw its interlocutory appeal if all items were consolidated here so that only one court is considering the issues?

MR. FARQUHARSON: Yes. I think -- yes. Subject to anything from Johnathan, that's what I would say is yes, as long as every -- the nonparties are agreeing that this Court has jurisdiction and can rule on the relief they are asking for in Dallas County.

THE COURT: And again, I don't -- I'm not looking at it -- you keep arguing a dominant jurisdiction in our motion, and I think there are specific mechanisms in the rules, and that's why I'm asking this question. Because the nonparty patients' counsel is not incorrect, but the Rule 176 specifically says that he's entitled to file in two places. He could have filed here or he could have filed there. So I don't think anybody can argue that he filed in an improper location. The federal rules just tell us, okay, hey, if we wind up in two places and they're in conflict, the way you approach that is you either ask them to move it. He has declined. And then it says, well, great. If they decline, then the next thing that we're supposed to do is to ask the Dallas Court to transfer. And at present, you have not done anything similar to that, correct?

MR. FARQUHARSON: Yes. And I don't think that I can agree to the characterization that he can -- they can sue us in Dallas County. The only way that he brings us before the Dallas County court is by filing a lawsuit against us.

THE COURT: Well, I recognize the arguments you're making. I'm reading just the text of the rule. The text of the rule authorizes protective orders to be filed in two different locations. I understand the State's position. I'm not disputing that position. I'm just reading the text of the rule.

MR. FARQUHARSON: Yes. The subject to it doesn't say that sovereign immunity is waived is the point.

THE COURT: Okay. And so as it relates to the motion that I've got, you've got no cases for me at present that say what have other courts done where there has been this conflict?

MR. FARQUHARSON: Not right now. I do have the *Nazari v. State* decision. I don't see this case -- on a quick glance of this case, I don't see any mention of a plea to the jurisdiction. I see a plea in abatement is what I see.

THE COURT: The Court will try and get to that to review. Okay. So no case law. So then let's

go ahead, and can you address then the nonparty patients' verified expedited motion to stay? At present, the Court has got a copy of the actual order that was entered and it says as follows: The hospital system shall not produce any documents to the State until the interlocutory appeal reaches a final resolution.

And so if I can hear from you in response to the nonparty patients' motion to stay.

MR. FARQUHARSON: Judge, the Court has already ordered production. The Court ordered production on February 28th. And the Court also two times, I believe -- this is a paraphrase -- that the Court overruled both the nonparties' and Children's objections to the extent that those objections conflict with the orders relating to the first tranche of production.

So that -- this is a moot issue. The Court has already issued a ruling. And the motion for stay was implicitly denied, given that the motion for stay was filed on February 27th and the Court ordered production on February 28th. Also, this is the point of our interlocutory appeal is that that is a void or voidable order because Dallas County had -- and I actually think it sounds -- the Fifteenth Court of

Appeals decision -- order indicates that that is a void order because all matters were stayed immediately following our interlocutory appeal.

THE COURT: And so I'm looking at the advisory that the Court was provided and the -- is this the totality of the *per curiam* opinion?

MR. FARQUHARSON: Yes. It's two pages.

THE COURT: Okay.

MR. FARQUHARSON: Exhibit D, I believe, to our advisory.

THE COURT: All right. Okay. Counsel, anything further as it relates to the State's motion for protection and any argument you have in response to the nonparty patients' motion to stay?

MR. FARQUHARSON: I don't think so right now, but initially -- initially you asked to address everything and so --

THE COURT: We'll go ahead and cabin and do just these two pieces and move on from there.

Dr. Lau, any argument that you care to make at this time?

MR. LEGG: No comment.

THE COURT: Okay. Dr. Cooper.

MS. HOLLAND: No comment, Your Honor.

THE COURT: All right. Let me go ahead and

ask at this time, Mr. Sutker?

MR. SUTKER: No, Your Honor, not as it relates to this issue. I think it's going to bleed over to the next one, though, so I think I -- it's better addressed there.

THE COURT: And when you say you think it's going to bleed over to the next one, can you tell me what you think the next one is? Hopefully you and I have the same idea, but I'd just like to confirm.

MR. SUTKER: Yeah. Just generally our obligations with respect to the production while sitting in the middle of two competing orders, and I think that I'm sort of a passive listener right now and then it bleeds into the protection order on what to do with the medical records primarily in light of all of that.

THE COURT: All right. Thank you.

And then, UT Southwestern, I think --

MR. WALSH: I would say the same thing basically.

THE COURT: All right. And nonparty patients?

MR. LOGAN: Yes, Your Honor.

So, you know, a few responses here, particularly as it goes to the motion for protection. One, the State cited no authority in its motion that

would suggest this Court would step in and determine the jurisdiction of the Dallas County court, or would determine what's currently under interlocutory appeal here. Essentially what it's asking is is for this Court to say, okay, this Court's going to make the determination that sovereign immunity applies and, therefore, the Dallas County cases must be abated, and essentially, also, at the same time, would now be depriving the court of appeals of its jurisdiction of appeal because the controversy would no longer be there underneath.

So it's a -- it's a really sort of exceptional relief they're asking for. It's basically an anti-suit injunction. And their proposed order is to force us to go to Dallas County and dismiss lawsuits that, as the Court noted -- not lawsuits but the actions per the protective order -- and that as the Court noted, were correctly brought under the black letter of the rule -- the Texas Rule of Civil Procedure.

So that relief is just completely unsupported. There is nothing there for it. And it would require this Court to essentially become a court of review for one of its sister courts and also step in the way of the court of appeals that's looking at the same issue right now.

The suggestion that we somehow leapfrogged this Court is wrong. The simple fact of the matter is we had before -- before we ever appeared in this court, had filed our motion for protection in Dallas County. When we came to this court, as the Court asked us to, we met and conferred, we worked at length with the State. The Court, of course, kindly assured us participating in that process isn't going to --

THE COURT: Mr. Logan, can I ask, what is the most basic discovery that you can imagine taking place in this case related to your clients' records?

MR. LOGAN: The most basic discovery?

THE COURT: The most basic discovery. What is the records that there is no question the State would have to ask for these records for their case to be able to go forward?

MR. LOGAN: Your Honor, certainly there are records that are going to have to be --

THE COURT: What? I'm asking for you to specifically tell me. What do you think is the most basic discovery that there is no question the State would have to ask for?

MR. LOGAN: You know, I suppose that they would have to ask for perhaps some redacted records that had to do with the treatment of the patients. But the

question here isn't just whether records will ultimately need to be produced; certainly they will. The question is the extent to which the production is going to be made and the amount of redactions that are appropriate under the controlling law.

THE COURT: And how has this Court not addressed that prior to the relief that you sought in the Dallas County court by and through its order confining the production of records to those from January 1, 2022, through the present only for the treatment offered by Lau and Cooper, only for medical laboratory and billing, and extreme levels of redaction? What else would you say that this Court has not provided?

MR. LOGAN: Your Honor, the problem is that this Court hasn't been able to, because it's not in front of it, adjudicate the objections and the privileges asserted to the scope of the requests in the subpoena. Certainly the Court's looked at this first tranche and said, here is a link to them, they can do these redactions.

The problem is the Court doesn't have discretion right now, like *In Re: Reed* says, to order productions while we have all of our objections pending in Dallas County. So the concept of -- and the State

keeps trying to make it along the line of, oh, you're just trying to go to Dallas County to get away from this Court. That's not really different than saying, well, they filed this in Collin County to get away from the Dallas County courts.

Both parties, us and them, had a choice of what venue to choose. I don't read any aspersions to Dallas County in their choice that this is the venue for their lawsuit, and there's no aspersions from our patients in choosing the place where they live and where their records are as the venue for protection.

THE COURT: I think my question is a little different. What other protections would you actually be able to get from the Dallas County beyond what I have already said would be provided here?

MR. LOGAN: Your Honor, we would be seeking, and are seeking, in Dallas County an order that would narrow the subpoenas themselves. In other words, not just, okay, here's the first one and we'll revisit some more later and maybe the next one is just all the rest of the records. We want to have adjudicated our objections to the scope of the request. So while we offered with the State, and it declined, to go to Dallas County and say, look, let's get a protective order in place and we can start a first production consistent

with what we said, they refused.

So if it's a question of expediency, we could just follow the rules and say there's a motion for protection pending. Let's get the proposed order entered there. Let's get production started. The fact is the State's not worried about the rules or expediency. It's worried about winning its fight about not having our patients be able to choose their venue.

THE COURT: Couldn't the same be said for you?

MR. LOGAN: No, because our patients had that choice, just like they had a choice about where to bring their lawsuit.

So beyond that, the sovereign immunity argument just doesn't even apply here. This is a procedural motion to challenge a subpoena. The Dallas County court's already adjudicated that and denied. So the Dallas County court's already determined it has jurisdiction and that sovereign immunity does not apply. They decided to file an interlocutory appeal. That appeal looks like it's going to delay this case, but that's a matter of priority for the State. If it wants to go off to the court of appeals and create new law about sovereign immunity and that delays the case here, my clients certainly don't have any control over that.

85

If the State would like to get rid of that interlocutory appeal and go get an order entered in the court that's currently adjudicating the protective order motion, we certainly can work with them to do that.

THE COURT: Say that least piece one more time.

MR. LOGAN: If the State would like to dismiss its interlocutory appeal and go get a protective order entered in Dallas County, the court that currently has jurisdiction over the subpoenas, we're happy to work with them on that. That's the most expedient way to get in an order that will get production started.

THE COURT: Anything further in connection with the State's motion for protection?

MR. LOGAN: I didn't know if --

THE COURT: No, to you. Because I think you were arguing your stay. Anything further from you in connection with the motion for protection that the State has requested?

MR. LOGAN: Your Honor, the only thing I would add is that, you know, at every turn, including this one, what the State's asking this Court to do is make some new law. And obviously, I think it's -- it's -- I'm not going to hide the ball that if there's an anti-suit injunction entered against our clients that

we're going to be -- seek review because that's massive, a massive hit to their procedural rights.  So then we're talking about further delay and more reviews instead of simply just following the rules as they're written.  So that would be our point on the motion for protection.

THE COURT:  Thank you.

Counsel, anything further from you?

MR. FARQUHARSON:  Judge, I would just say it is within the plenary power of this Court to order whatever it sees fit.  It has ordered the production.  It did not have -- it has ordered the production.  And to the extent that the -- again, this case that -- this *In Re:  Reed* case does not appear to address a plea to the jurisdiction.  To the extent the Court believes otherwise and finds this case compelling, we would simply ask for an opportunity to provide supplemental briefing to address this case.

THE COURT:  And I'm so sorry.  Counsel, say that last piece one more time.

MR. FARQUHARSON:  To the extent this *In Re: Reed* case, as I said, it does not appear to address a plea to the jurisdiction and to the extent that the Court finds it compelling, we would ask for an opportunity to provide supplemental briefing to the Court to address the case.

THE COURT: Thank you, Counsel.

MR. LOGAN: Just a very brief reply to that because he mentioned again something about conflicting orders. Our understanding of this Court's orders were that production would be prepared but there was not an order yet for the documents to be produced as it goes to tranche one. So at current, we don't have a belief that there is a conflict of the orders unless the Court further goes and --

THE COURT: I think it depends on what you define as production. So I'm looking at the order right now related to -- I'm going to use the unrepresented because there was obviously one order that was entered as it related to the unrepresented patients and one entered as it related represented.

In the prior conversation, I withdrew the instruction regarding rolling productions to begin on March the 11th and ordered all documents to be prepared for production by March the 21st. On that date, though, the records are intended to be produced by Children's Medical and UT Southwestern to Doctors Lau, Dr. Cooper, and for your clients, to you. So to the extent that you don't deem that production, then I suppose that portion of the order does not, but the records would be leaving UT Southwestern and Children's and so, yes, I did order

production.

MR. LOGAN: We understood the Court's March 7th -- or maybe it's March 6th -- oral order to supercede that and simply say let's get it prepared for production but have a hearing on the 20th and we'll be prepared to produce on the 21st. I only ask because I do need to know if there's a conflicting order, if there's an actual order --

THE COURT: Well, I didn't revoke anything other than my instruction to prepare the records and to begin producing prior to the 11th. So at present, I haven't withdrawn any of the other provisions. I set this hearing today so that I had the benefit of all the arguments, and should I choose to revoke my prior order, I have the ability to do so. But on our prior conversation, the only revocation that was made was to withdraw the rolling production. So no documents have been produced at present, but I didn't withdraw the remaining pieces.

MR. LOGAN: Thank you for the clarification.

THE COURT: I mean, I think -- I just need to clarify. When you say production, does that to you mean to the State, or does that also mean the records leaving the hospitals and going to you?

MR. LOGAN: Yes, Your Honor. Anything that would have the hospitals, you know, release their control of the records or even, you know, essentially, you know, decide what should or shouldn't be redacted before our objections and assertion of privileges have been ruled on, we would obviously object to.

THE COURT: All right. I think that I've heard everything on those two motions. Are you prepared -- okay? Yes.

MR. LOGAN: I don't know that we've been heard actually on our motion to stay. I know the Court asked us to talk about the motion for protection.

THE COURT: That was intended to be if you had any pieces on the stay, I thought that's what you were also discussing. So if you have additional points you want to make on the stay, by all means, this is your time.

MR. LOGAN: Okay. Well, on the motion to stay, Your Honor, what we're actually trying to avoid is the kind of conflict that came up in *In Re: Reed*, for instance, which is where you have a court that is currently adjudicating a motion for protection, and accordingly, the nonparty patients have not had their objections or their privileges adjudicated by any court. Their motion isn't pending here for this Court to even

adjudicate it. So cases like *In Re: Reed* instruct the subpoena is stayed and that it may even be an abuse of discretion to order productions when that is pending in a sister court, as it is here.

What the State is suggesting, to go ahead and produce anyway, sort of eviscerates the rule. Because if the trial court can simply say, well, I know you filed something in another court seeking protection, but I'm going to go ahead and order production anyway, there's really no meaningful way to seek protection in the county where the subpoenas were served. And what we're trying to avoid with our motion to stay is that exact conflict. We're not saying we don't want anything produced. We've never said that in this case. But our clients have made a valid choice under the rules to seek protection in Dallas County. We're asking for that to be respected. We're happy to work with the State to get production started out of Dallas County, but if we're going to have to go through this whole process of an interlocutory appeal, that's going to take some time. But that's up to the State. That's not up to us.

THE COURT: Anything further, Counsel?

MR. LOBAN: Just that the last part is the State has said several times, I think even today, that the Court, you know, overruled our motion to stay or

denied it. When we went on the record, I went back and looked at the transcript. You know, the Court said, well, they said they didn't have notice, so, you know, we're not going to get to that today. If the Court -- and all I'm asking for is clarification. If the Court did deny or intended to deny our motion for stay, we would just like that clarification.

THE COURT: Thank you. Anything further?

MR. LOGAN: That's all.

THE COURT: Okay. State, anything further from you?

MR. FARQUHARSON: Very quickly. The conflict was not created in this court. This Court had an order. The conflict was created from them expediting their hearing. So this Court did not create a conflict and is not going to create a conflict. It's just following through on its orders.

THE COURT: I recognize y'all have a very different position on that. I think you've memorialized that you disagree with what he just said.

MR. LOGAN: Well, I think it's important to say here that when the Court issued that ruling on February 28th, the motion for protection was already pending in Dallas County.

THE COURT: All right. At this juncture

are we ready to go back to the Rule 12? Were you able to get clarification on your end? If not, again, no problem whatsoever. Just asking if you were.

MS. KROMINGA: No, in that I wasn't able to get an individual attorney, but the question then becomes we -- we provided the agency an agency with -- or sorry -- a division with which UT Southwestern has worked previously. So if UT Southwestern has a specific attorney that they're uncomfortable with, we would welcome that information to pass it along as part of this request, but I really don't trust their --

THE COURT: Can we phrase it differently? If there's a particular attorney that they feel very comfortable with, could they do that as opposed to the opposite?

MS. KROMINGA: Sure, that -- sure, that's fine. I guess the purpose --

THE COURT: It seems to me that's more positive.

MS. KROMINGA: Yes, yes.

-- was why is the division not enough information, is there a reason. And that was -- that was that. But yes, I will flip it around in the positive. If there is an AAG with which UT Southwestern feels comfortable with in that division, we would pass

that along.

THE COURT: Okay. And your response to the case they provided.

MR. WALSH: Sure. So, first of all, it's an agency versus agency case where the two agencies have some dispute that they're trying to resolve. That was my example of the funeral board having a claim against UT Southwestern. That's not the legislative conflict that exists under H, right, and so it -- the case is inapplicable in that it's not the State or the AG bringing something against UT Southwestern, which is what's occurring here.

The second thing I would say, even in this case, it doesn't stand for the proposition that they're really even talking about there. It says, because we -- and this is on page 5 at -- at the very bottom of page 5 --

THE COURT: Okay.

MR. WALSH: -- where it's bold -- it has the bold, page 126 from the case.

THE COURT: Yes.

MR. WALSH: Because we base our decision solely upon the language of the PURA, which is a specific statute, and the SGPSCA, another specific statute, we do not address the attorney general's

contentions that his dual representation of opposing agency does not create a conflict of interest. While our decision is consistent in result with decisions of other state courts that have permitted dual representation, we express neither approval nor disapproval of these authorities. If dual representation does, in fact, create a conflict of interest, it's a prolem of the legislature's creation and one that the legislature must resolve. And my point about that is, we have the resolution in 16.01(h) at least with regard to when the AG takes action against the state agency, which it has with the declaratory judgment, the motion to compel/sanctions, with the subpoenas that are directly adverse to the UT Southwestern's institutional interest. That's where we get that they have taken direct action against us, triggering the conflict resolution in 16.01(h).

THE COURT: Any additional final points?

MS. KROMINGA: Yes, Your Honor. Just to address the case, and I'll address 16.01(h) again. But what the Court was reviewing was language within two specific statutory provisions which authorize the attorney general to represent these agencies. And it -- and it says that -- based on the letter of the law when you look at those statutes, it says that the attorney

general shall represent those agencies. So yes, it is specific to those in that sense, but, Your Honor, when you look at -- we can -- we can apply that here because when you look at the Texas Government Code, it says, the attorney general shall provide legal services for a state agency for which the attorney general determines those legal services are appropriate. And so it's a shall shall. It's been -- the attorney general has a duty. The agency has an obligation under the Texas Government Code to seek that representation or to seek an effective waiver of that representation by getting outside counsel, and again, as the opposing counsel just read, the court there said even if. Even if dual representation did create a conflict, it's one of the legislature's own making and one that they must resolve. And so they said the Court could not resolve that and it even gave an entire paragraph --

THE COURT: So what do we do if there's a conflict and you're saying, hey, the legislature must resolve it?

MS. KROMINGA: Right. Well, you would -- as I read this case, so you can go -- it's the third-to-last full paragraph in the case, but they said there are many alternative ways of ensuring an adversary proceeding in this case where the AG is representing

both the agency -- first, a statute authorizing does not close the mouth of the agency or the ears of the court where there are complaints.

And I don't need to read that whole paragraph to the Court, but basically the way I read this opinion is that the Court is saying, when the AG is authorized or required and has a duty to represent an agency or an agency has a statutory duty, this is consistent with statutory construction, right. We cannot read language into the statute. And nothing in the response by UT Southwestern -- they didn't even address the Texas Government Code in the response. So there has been nothing to address the requirement that they seek approval by the AG's office, and there's nothing in this case or others that says, oh, well, being uncomfortable with dual representation inherently creates a conflict. Again, they point to one provision of the appropriations act which deals with conflicts related to funds, issuance of funds, nothing to do with representation and retaining outside counsel.

And the last point I'll make, which we raised in our reply brief, is that, you know, we can look at -- Texas law does contemplate this and recognize that there are instances when State actors might be adverse in litigation. For example, under the Texas

Civil Practice and Remedies Code 104.004(c), it says, It is not a conflict of interest for the attorney general to defend a person under this chapter and also to prosecute a legal action against the person as required or authorized by law if different assistant attorneys general are assigned the responsibility of each. And in *Cofer*, the Honorable Wallace pointed out that, yes, these statutory constitutional powers invested in one attorney general, but it's effectuated through many assistants, so.

THE COURT: Thank you, Counsel.

One final opportunity. I just want to make sure I'm not cutting you short. Do you have anything else you would like to place upon the record?

MR. WALSH: Yeah. I would just -- we seem to be glossing over 16.01 and what it actually says about the conflict when the AG is bringing -- the AG of the state, right. It's -- it's addressing situations that are not this -- this *Cofer* case because it's not agency versus agency, and this isn't agency versus agency. And I would say that if Children's, instead of hiring Mr. Sutker, decided that it wanted to hire Winston Strawn, who also represents the patients, we would all say, Winston Strawn can't represent the patients and then decide what records to be produced

under the subpoenas because that's the inherent conflict of interest. And that's what we have here of the clear conflict of interest, at least in regard to the patients. I have also made the argument about the employees, et cetera, but my point is 16.01(h), legislature has resolved this very scenario as the *Cofer* case suggested the legislature needs to do, and it did.

THE COURT: Thank you, Counsel.

All right. At this time the Court declines again to strike the objections and responses of UT Southwestern. I further decline to find waiver by the AG's office, and I reject all arguments that have been made by UT Southwestern save and except for conflicts arguments. The Court's going to review the cases cited in the reply. I've not had an opportunity to review it, and since that wound up being the focus of the hearing, I require an opportunity to do so.

As well, UT Southwestern, I think you should have an opportunity to file a sur-reply if you desire. So you may file a sur-reply on or before March the 24th, no more than five pages in length addressing those cases. I stay any further obligation to produce by UT Southwestern in light of the AG's statement here today that they will not confer upon Mr. Walsh authority to produce any additional documents in connection with

this cause pending resolution of this particular motion.

I direct current counsel for UT Southwestern to further confer with the AG's office related to the administrative law division and specifically whether there is a person within the division that UT Southwestern would be comfortable with and after further consultation with UT Southwestern client.

Let me just ask at this time, UT Southwestern, any questions whatsoever related to the Court's ruling?  Any request for clarification?

MR. WALSH:  No, other than getting a copy of the transcript.

THE COURT:  I can't promise that you're going to get a copy before this briefing is due.  We are slammed, and I can't promise you that that's going to happen, okay?  So do you need me to repeat it again, or do you feel comfortable that you understand what you have to do by Monday?

MR. WALSH:  Yes, ma'am.

THE COURT:  All right.  So you've got two things you've got to do, right?  You've got to confer with the AG's office after talking with your client, and then as well, you've got to file a sur-reply if you want to.  You don't have to.  You're not obligated.  But

certainly I want to provide you that opportunity.

AG, any questions regarding the Court's ruling at present?

MR. LOGAN: Nothing further, Your Honor.

THE COURT: Okay. And a query as to does it make sense to enter an interim order related to the grounds the Court has declined to adopt or rejected? If you would like to wait until the totality of the Court's ruling, I'm happy to do that. I'm just inquiring what y'all's preference is. Sometimes it's helpful when talking with clients, sometimes it's not. Y'all just have to tell me what you want. Okay? All right.

So in light of that, I think it's not appropriate for the Court to take up UT Southwestern's motion at present because we really do have to resolve this issue, and I've found that there will be no additional production at present by UT Southwestern, so we'll go ahead and table that. I think that takes us to the only remaining motion on the table is the Children's motion. Am I correct?

MR. SUTKER: Your Honor, it's Cory Sutker for Children's. I think you're right. I'll sit on the motion. I don't know that there's a lot of dispute in light of where conversations were headed before the Dallas County proceedings where I had talked to -- to

Mr. Stone and the group on credentialing information and e-mails and just having time to sit down together to come up with search terms and things like that. I think we're in agreement related to production provided we can narrow the playing field. So that my only other real issue today is still where do I stand in the middle of competing orders between Dallas and Collin County and with the venue motion before the Court? I don't know where the Court's going to come down on that, obviously, but if venue ends up in Dallas County, where does that leave me in that court's eyes if I produce documents. And then, more importantly, this production -- the venue production wasn't easy in and of itself and I became the redacting side for both parties after exchanging. These new records are way more voluminous --

THE COURT: What's the volume?

MR. SUTKER: Well, I have today 3600 pages still to go through and --

THE COURT: And the total?

MR. SUTKER: And that's -- and I think -- I think we have 12 -- 10 or 12 patients done. And because even with the more limited redactions, there is so much information within paragraphs and within pages and -- and I know, no matter what my office does, just knowing how much we fought over pharmacy addresses, no matter

what I do, it's going to be a fight, a redaction fight. And I'd be remiss to my client if I didn't mention that this is costing them thousands of dollars just to be the redacting agency for these two parties -- or three parties' disputes, which is -- it is what it is. I'm acting under the Court's order in that regard.

But even by tomorrow, certainly we could start rolling production and get some records out and start letting people get that done, but I still have a very -- my level of comfort in doing that in light of Dallas County's order is -- is not there. And I did also, Your Honor, understand from our phone call after Dallas County -- Dallas County hearing was that the order was to get the records prepared, which we are still doing, and one reason Ms. Cooper is not here is because she's at home redacting. But that's, I guess, kind of putting that all out there for now, some comment.

But I do think with regard to the rest of the subpoenas, if Mr. Stone and I had time to sit down, I think we could come up with search terms with respect to e-mails. And I've explained to him the credentialing privilege but just said what information is it that you need because that probably can exist outside the credentialing privilege or at least I can find out if it

does.

THE COURT: And that relates to the items that we've discussed in what I call subpoena number two, I believe.

MR. SUTKER: Yes, Your Honor.

THE COURT: Okay. And my understanding is you and Mr. Stone are already going to get together early next week so we can address the patient notice issue. So are y'all able to wrap this conversation into that?

MR. STONE: Yes, Your Honor, we can.

Could we go off the record, though, so I can ask you a question that I think might help us?

THE COURT: Yes, absolutely. Let's go ahead and go off the record.

(Discussion held off the record)

THE COURT: Mr. Stone, at this time if you can restate your question.

MR. STONE: Yes, Your Honor. The State -- picking up on what Mr. Logan mentioned a few minutes ago, he kind of got me thinking and I wanted to see what it would look like with this Court if we were to withdraw our current subpoenas to the hospitals. That would moot out the Dallas action. It would moot out the appeal. We wouldn't have multiple courts issuing

multiple rulings. And then instead, we would work with the hospitals, we could work with the parties and try to produce narrow requests, just like we did with the first tranche, to this Court, and the Court can hear from all the parties, hear objections, and then issue orders to the hospital to produce. This way we're not having this battle with different courts issuing different rulings. It's just that -- I'm just curious if this would even be within the realm of possibility.

THE COURT: So let me kind of refine your question, Mr. Stone, and we're going to hear first, I think, from Mr. Logan.

So you're proposing what if we withdrew the subpoenas, and if we do, then that entirely moots the motions for protection that have been filed in Dallas County because there is no longer any live subpoenas. And instead, we would represent to Mr. Logan as an initial matter, the only request that we would actually serve would be -- and I'm going to use roll one just as an example because that's what we've been working on -- we would serve a request only for the documents that are contemplated by roll one. Then after that, we would sit down and we would have a multiparty conference to say, hey, here are the other things that we might like, what are your thoughts on that, can we reach a resolution

regarding what additional records all parties agree, and that would reduce the amount of expense to everyone.

Am I correctly paraphrasing, Mr. Stone, what your proposal is?

MR. STONE: Yes, Your Honor.

THE COURT: Okay. And then I guess we would need your response. If they were to withdraw, agree, at present, the only request that would be made as it relates to patient records is what we have all been kind of discussing and the framework and anything beyond that, they wouldn't ask now. They would say, can we sit down and have a conference with you so that we can be certain that anything else we're all on the same page on.

MR. LOGAN: No, Your Honor. I mean, this is a mechanism to avoid the patients' rights to challenge the subpoena is unworkable. The only mechanism in the rules for requesting medical records is under 205. It has a specific provision that says subpoenas have to be served on the patients, the people, so --

THE COURT: I think they're proposing to re-serve a subpoena but saying the only subpoena that would be served would be confined to the very small tranche of medical records that we're discussing and

there would be no additional subpoenas that would be served until after they had an opportunity to confer with you.

MR. LOGAN: No, Your Honor, we would not support circumventing the jurisdiction that Dallas County has already taken of the subpoenas that are in front of it. If they're going to re-serve additional subpoenas in this case, we're obviously going to look at those and see if we need to challenge them as well. But the subpoenas that are in Dallas County area there. Now, if they withdraw them, the best I know, there is actually no obligation anymore for anyone to produce anything and we start back over because any productions have to be under a subpoena.

THE COURT: I don't disagree with you on that. I think the State is trying to meet you in a place that would make your patients comfortable. Do you have a counterproposal?

MR. LOGAN: I do. If the State would like to meet me in a place that makes my patients comfortable, they should meet me in Dallas County, because that's where they filed their motion for protection. I'm happy to put in a narrow first order like this. We can go and ask the court to do it tomorrow, but they don't want to be there. And I can't

do anything about that.

THE COURT: Okay. So I don't think I understand. When you say enter it in Dallas County, you're saying have them submit to the jurisdiction, transfer these causes down to Dallas?

MR. LOGAN: No, not at all, Your Honor. What I'm saying is the subpoenas are currently being adjudicated in Dallas County. If they want to first narrow production under the subpoenas, all we have to do is ask for the Dallas County Court to order that.

THE COURT: But that's not what they're saying. They're saying we're going to stop everything as it relates to the existing subpoenas so there's no concern regarding the overbreadth.

MR. LOGAN: The Court asked what I thought an appropriate middle ground would be. The middle ground would be to ask for that first production to be ordered out of Dallas County.

THE COURT: But if they withdraw those subpoenas, they'll be mooted, and there won't be anything for that Court to preside over.

MR. LOGAN: And then if they issue new subpoenas, I suppose we'll have a new dispute.

MR. STONE: Why can't this Court issue orders? Like, why can't this Court just order

production from the -- from the hospitals? I mean, that's kind of where I'm at. Like, I'm wondering if that's a possibility. I haven't -- again, I haven't researched. I'm trying to find solutions here that -- that make this easier.

THE COURT: And I appreciate it, Mr. Stone. I think at this juncture, you know, the hospitals, the doctors, the State, at least as it relates to this initial production, are all on the same page. And so at present, the nonparty patients are the only ones who we don't have a general framework with. I don't know the answer to that question, Mr. Stone. And so I guess the query I have at this time is: Are you going to be withdrawing those subpoenas, because certainly it will impact our proceedings today, or are you going to, I guess, leave the subpoenas present? So I just need to know, hey, having had this idea, are you going to go ahead and say, I withdraw those prior subpoenas, we're going to serve new subpoenas in connection with notice on the patients for just that one small tranche of records?

MR. STONE: No, Your Honor. We'll -- we'll just proceed forward. It sounds like even if we did that, they would file another lawsuit in Dallas and we're just going to delay things and be right back where

we started. So let's go ahead and -- I think we'll go ahead and proceed.

THE COURT: Mr. Sutker, is there anything else that you would like to place upon the record at this time?

MR. SUTKER: Specifically, I mean, I think I've addressed it all. I, again, just want to mention for digestion sake and trying to figure out what to do about this later, that this -- the burden and cost on Children's as a nonparty has been immense and will be when it comes down to mining e-mails as well. And I really -- I think this -- I would like to figure out if there's a better mechanism in play with respect to Children's through my office and folks who work for me, try to decide what redactions make sense in light of the Court's previous guardrails, and then I get responses back from the doctors, patients, or the patients' attorneys on, well, we think this information should be redacted, too, and at that point, my firm's just becoming a glorified, like I said, redacting machine, which is -- is time consuming and then we --

THE COURT: And I don't think in contemplation with any additional documents. It was just the motion to transfer venue that we had contemplated that. In fact, I mean, I believe that the

orders previously entered by the Court -- oh, no, it does have further redactions requested by counsel for Dr. Cooper as opposed to transferring the responsibility.

MR. SUTKER: And so in that regard, what we didn't address was logistics. And one of my thoughts on that was electronically I can send records over with what I've been -- we'll call soft redactions, meaning the redactions are kind of outlined but they don't get applied -- and sending those over to the appropriate attorneys. If they want to add their own redactions in, that's great. They can add them in and then save another set that will have competing sets.

But I think just based on my own review of these records and knowing what disputes have been existing so far, it would be a laundry list coming from each side of what we think should be redacted in addition to what we're already redacting, and I think just for efficiency sake, the representatives for those patients or those patients' privilege should have the opportunity to just add those redactions in versus trying to make them come back to us and continue to just have all these evolving sets of redactions.

THE COURT: Mr. Stone, is there any objection by the State?

MR. STONE: No, Your Honor. We think that makes sense. If they're going to make the redactions, it's duplicative. If they mark it but then don't redact it, it's -- I think it totally makes sense to have them just do the redactions themselves.

THE COURT: All right.

MR. FARQUHARSON: Judge, if I could, to add on to Mr. Stone's earlier point. I would be curious whether or not Children's, on the record, if we were to submit a DWQ to Children's and Children -- without a subpoena, and Children's were to say, we will respond to your DWQ without a subpoena, it seems to me the nonparty patients would not have standing to contest that in Dallas County. They could make challenges here or they could -- they could enter into the DWQ. But I think it's a question that Mr. Sutker may be able resolve.

THE COURT: Mr. Sutker.

MR. SUTKER: I guess I don't understand the process exactly, but if there's -- from what I heard, if there's a DWQ served upon me and there's -- you know, working through whatever objections there would be to breadth and everything else, but along the same line of where things are headed, I would obviously comply with the obligations that are thrust upon my client with respect to answering that information. What that means

logistically for everybody and their rights, I -- I don't know that I can speak to that.

MR. FARQUHARSON: So I think the question is: Would you -- would you be willing to respond to a DWQ in the court without a subpoena?

MR. SUTKER: The DWQ just seeking medical records?

MR. FARQUHARSON: The records contemplated by tranche one.

MR. SUTKER: Yeah. I mean, I guess, as I sit here initially, I don't -- I firmly -- I personally don't have a problem with that concept, but I guess I need to think about that and make sure that I run that through the appropriate people before I would speak for them.

THE COURT: Sir, are you asking for a recess?

MR. SUTKER: I -- I guess I am. If that's -- if that's the proposal on the table, I'm either asking for a recess to confer with my client on that issue. Alternatively, I am asking for an extension of -- well -- or if I'm in the position of records need to start going out the door tomorrow despite the two competing orders, then I'm asking for an extension of additional time to start rolling production on those

records, because when I first addressed this with the Court on the 26th and the 28th, I had no idea what kind of volume we were -- we were looking at, which I have clarity on that issue.

THE COURT: We're going to stand in recess for a period of ten minutes. That will permit the State to confer on their end; nonparty patients, on yours; and, Mr. Sutker, for you to talk with folks on your end. So we'll be off the record and we'll be back on ten minutes from now.

(Recess was taken)

MR. WALSH: My direct client didn't know enough people in the administrative law division to say, we want this person. And also, keeping in mind that the attorney general probably has docket control issues and other things so that there might not -- even if we said we want John Smith, they might say, well, yeah, you can't have John Smith.

THE COURT: Well, they may, but we don't know if we don't ask.

MR. WALSH: Correct. So since we don't know, we're going to investigate that by talking to people at the UT system and some other people to see if there's somebody we say we want. And then in the meantime, we're hoping to get powers that be among

themselves, without us, talking about whatever solutions that they might peaceably make among themselves to resolve this thing.

So my proposal, if you're agreeable to, is either on Monday we file some agreement among ourselves that we reached a resolution, or I file a sur-reply on Monday and we let you know we want you to go forward.

THE COURT: I think that sounds lovely and I'm really appreciative to both of y'all for being willing to engage in the exercise of having a discussion about it.

Is there anything else you want to place on the record?

MR. WALSH: No, Your Honor, other than just we have -- you know, globally UT Southwestern has an interest in this medical record issue that I think I need to stay a little bit longer for.

THE COURT: I'm not requiring you to leave. I think we just have a counsel who, once we conclude this piece, no longer needs to stay.

Anything else that you need to be placed on the record?

MS. KROMINGA: No, Your Honor. He summarized it perfectly.

THE COURT: Okay, lovely. Then with that,

you are certainly excused. And any other persons who don't wish to remain here are excused and no longer have to do so for either UT Southwestern or the AG's office.

MR. ANDERSON: I am going to excuse myself then, Your Honor.

THE COURT: You're going to take yourself out of the corner is what you're telling me.

MR. ANDERSON: Yes, please. Thank you.

THE COURT: All right. Thank y'all.

All right. We're going to go ahead and go back off the record.

(Discussion held off the record)

THE COURT: Counsel, I don't know who wants to take the lead in terms of whether there is an update to provide to the Court. Mr. Sutker, Mr. Stone, I'm looking to you two to tell me if it will be either of you two.

MR. SUTKER: I'll start, I guess, Mr. Stone, if that's all right.

I believe where we left off, Your Honor, was a proposal for Children's to agree to a DWQ and then to produce information. We had a pretty long discussion amongst all counsel regarding the various issues with that. And ultimately, where Children's comes down is, I really can't agree to do that. We've talked about other

proposals, too. And why I don't think it's necessary, unless the other counsel think we need to, to reiterate all the reasons on the record, ultimately, I cannot agree on behalf of Children's to engage in something that bypasses the patients' rights to assert whatever objections they want to assert.

And so I took into account the -- the AG's position certainly but also Mr. Logan's. And so I'll -- without that agreement -- we do have an agreement where Mr. Stone and I can continue to meet next week to start narrowing the playing field on the nonmedical record production.

THE COURT: So what I've been calling subpoena number two?

MR. SUTKER: Yes, Your Honor.

And then I can start collecting that information and having it ready to go. And then with respect to the medical records, unfortunately, I don't think there's an easy answer that satisfies everybody as to how to proceed when there is this Court's order versus the Dallas County Court's order.

I have represented to the parties that regardless of the orders, my office will continue to redact records and I expect can have them finished completely within the next couple weeks such that when

there is finality from somebody, they'll be ready to go out the door as was previously discussed. But I -- and I appreciate all the suggestions that were made today. I do think the way that the State presented them, I honestly don't think that they were trying to bypass anybody's rights. I think they specifically said that they were not. I think it was just trying to get the ball rolling on production. But I have some uneasiness with the way Rule 205 works and needing a subpoena to do that and giving them the right to choose the venue, as they have already done. I just can't be a part of that kind of arrangement.

THE COURT: All right. Mr. Stone, anything to add to Mr. Sutker's report to the Court?

MR. FARQUHARSON: Judge, I'm going to speak for the State.

THE COURT: Okay. Sorry.

MR. FARQUHARSON: Judge, I -- we respect the decision of Children's, but I do want to clarify. It absolutely is not our intent to deprive anybody of any rights. The simple request was essentially would Children's submit to the jurisdiction of the Collin County Court in the absence of the subpoena. Not even would Children's produce documents but would it submit to the jurisdiction of the Court with all of the same

protections that are already provided by the protective order and with the limited scope of tranche one.

So we want to make sure the nonparty patients have their opportunity to present objections and privilege assertions and even to get to review the documents as provided by the protective order and can submit them for an in-camera inspection. I presume this transcript is going to make its way to Dallas County, and so I want to make sure we are all on the same page. Nobody here was trying to -- to run an end around anybody's rights.

THE COURT: And the Court did not perceive it in that manner. I think the way the Court interpreted Mr. Stone's offer and the effort is, we think the alternative request in the motion for protection relating to the patient records is for the small subset we've identified. Everyone, I think, other than the nonparty patients agrees that's the most basic discovery that will happen in this case. In pursuit of the claims that have been asserted, whether you like the claims, don't like the claims, there is no more basic discovery than what we have distilled in roll one. There can be no more basic discovery.

And so, you know, to that end, the way I interpreted it is Mr. Stone's effort to say, can we

distill and only talk about the most basic discovery and take all other discovery off the table such that we all have an opportunity for the patients to have their objections heard but in a conference of counsel, not in connection with -- because there would be no discovery requests that were pending that were more broad. That is how the Court interpreted the offer. I know from the nodding of heads by other persons that were in the room that that appeared to also be the interpretation by, you know, Children's, UT Southwestern, and counsel for the doctors.

So with that backdrop, Counsel, do you have any anything else you would like to state?

MR. FARQUHARSON: We believe that the only solution now -- in light of the absence of an agreement, the only solution is for the Court to -- to grant us protection. And I also want to clarify that the protection -- protection also extends to Cooper wherein Dallas County has not done anything, and so we are asking for protection from both the Lau and Cooper issues. And again, we're not asking that they don't get to make any assertions of privilege or any objections. We are simply asking that those assertions be brought to this Court and that they be heard by this Court, who has invested hours and hours of time and created a very

thoughtful process for production.

THE COURT: Thank you. Let me just -- I don't want to take anybody's rights to put anything on the record. So let me ask Dr. Lau's Counsel, anything, sir, you would like to place upon the record at this time?

MR. LEGG: No comment, Your Honor.

THE COURT: Okay. Dr. Cooper's counsel, if you're still with us, Ms. Holland, is there anything else you would like to place upon the record at this time?

MS. HOLLAND: Your Honor, nothing directly related to this issue. The only thing I would add is that we filed on Monday a motion to strike the attorney general's petition in intervention and we think that the arguments raised there relate to any remaining arguments the Court is considering regarding the Rule 12 motion. So we would ask that the Court take up those briefs together to the extent that Your Honor is still going to offer a ruling as to the Rule 12 motion.

THE COURT: And I think in part that will depend on whether or not ultimately any agreement is reached at a higher level than those and not in -- not in any aspersions intended, but a higher level than what's present here today.

MR. WALSH: And I assume just --

THE COURT: Since the AG is not present any longer.

MR. WALSH: Correct, that we shouldn't deal with this issue. We should set it for a hearing at a different time to hear that.

THE COURT: I think she's just noting that the conflict issues are addressed and so please don't ignore that it's on file. Ms. Holland, that's how I took you to say it.

MS. HOLLAND: That's correct, Your Honor. You said it more eloquently than I did.

THE COURT: Mr. Sutker, anything else that you would like to place upon the record?

MR. SUTKER: Only, Your Honor, just to clarify one other point which I have expressed and I think there was suggestions on how to ensure that these issues are also met. But under any proposal, I also had concerns with HIPAA in terms of needing either a court order or a subpoena, and also making sure that there's proper notification to the patients if we were to revise the plan, which -- which ultimately we are not. But I wanted to make sure that the Court was aware that those were also two other concerns, though admittedly everybody acknowledges those and we had some proposals

related to them.

THE COURT: And certainly I think I've echoed this at prior hearings. There is nothing, no matter the Court's ruling, that -- that ceases the parties from communicating. So I know, Mr. Sutker, you and Mr. Stone have had a limited opportunity to speak today. There is nothing that ever precludes the parties from working together to reach agreements and I'm always going to encourage y'all to do so.

At this time let me ask, UT Southwestern, I would assume that at this juncture, in light of the Court's other rulings at present, you have no additional comments other than to say you stand on the objections which the Court has not stricken in any way?

MR. WALSH: Correct.

THE COURT: All right. Thank you, sir. And then, Mr. Logan?

MR. LEWIS: I'm sorry. Your Honor, may I be excused?

THE COURT: Oh, yeah. Are you okay?

MR. LEWIS: Oh, no, I'm fine. I just wanted to ask the Court's permission.

THE COURT: Yes, absolutely.

MR. LOGAN: Your Honor, so to add some things to the record since the State addressed its offer

or its proposal --

THE COURT: Yes.

MR. LOGAN: -- I would note that we disagree with the State's characterization of it. It does appear to us to be aimed at depriving the Dallas County Court of its jurisdiction over the subpoenas. More importantly, though, than that, Your Honor, I want to also put on the record that again, for what's been multiple times now, we offered to the State to go and put an agreed order in in Dallas County, where the motion for protection is pending, to get the first tranche started and they again declined. So their assertion that there is only one path forward here just isn't true. There is another path forward, another way to get this done. Beyond that, Your Honor, we would just note that we continue to object to any productions while our motion for protection are pending.

THE COURT: So, Mr. Logan, would you agree the order that the Court has entered to roll one, if we were to go and to file and to ask the Court in Dallas to enter that order, you would be agreeable to that?

MR. LOGAN: Your Honor, if we went to Dallas County and the Court agreed with that order, we're happy to go and submit it to that Court and ask it to enter it because it's the Court right now that has

jurisdiction of our motion for protection.

And importantly -- this is important for the Court to know -- in their plea to the jurisdiction in Dallas County that they just filed, they cite abatement and they say part of the reason we should be abated is because we've participated in these proceedings here and we've gotten relief from this Court, despite what we thought were really clear directives from this Court that us participating wasn't going to jeopardize our rights in any way.

THE COURT: And I think I've been very clear that I intended in no way to jeopardize. I've been thankful to everyone to participate in the discussions. Whether I ultimately agree with the paths that have been taken is a different point, but I will reiterate that at no point in time do I find that you have waived any arguments or objections and the communications I've asked for y'all to do was so that we could ease the burden on all parties.

MR. LOGAN: Thank you, Your Honor. And so with that background, that's part of the reason that it's very important to us that if there is going to be an order entered for this first tranche, it should be entered in Dallas County where the motions for protection are pending because we feel like it puts in a

very perilous position to start agreeing to piecemeal productions here when we're trying to get the motion for protection there.

THE COURT: Thank you, Counsel.

All right. At this time, then, everybody's points having been placed upon the record, again, I'm trying to give y'all the totality of the record so that if you have any additional points, this is your final opportunity. Going once, going twice, is there anything else that anyone wants to place upon your record here today?

MR. LOGAN: This one's not so much on the record, but we did also have a motion for protection pending for the party discovery here that was noticed for today. I don't think it's critical that we get to that today. I just wanted to note it for the Court so we can take that up later when it's appropriate.

MR. STONE: We have one issue, Your Honor.

THE COURT: Yes, sir.

MR. STONE: We'd like -- I know the -- I'm sorry. Your Honor, can you hear me?

THE COURT: I can.

MR. STONE: Okay. One thing that I think is a recurring event at these hearings is for counsel for Cooper and Lau to give the Court an update on the

production that they've been gathering, and I think it will be helpful to the Court to understand exactly how much production the State has actually received so far. So we would ask if the counsel for the parties could provide the Court with an update.

THE COURT: We'll start with Lau, who's present.

MR. LEGG: Your Honor, we've made two rolling productions.

THE COURT: Can you pull that microphone. You are the most soft spoken lawyer I've ever met.

MR. LEGG: Sorry. Your Honor, we've made two productions so far, two rolling productions.

THE COURT: And the volume? What's the page count?

MR. LEGG: The page count, I believe, is about -- my Bates numbers off the top of my head -- about 180 pages, about 100 records total so far. We are continuing to roll. We've collected everything like we represented last time and are just doing that review and we are mindful that the Court's waiting on us to update our objections.

THE COURT: And I would encourage y'all to be a little bit quicker than you have been. 180 pages, from where we're at, is not a substantial step forward

in connection with the discovery, and so I would just encourage y'all to step up your efforts and ensure that you are getting those rolls taken care of more quickly and getting more documents out the door.

MR. LEGG: Yes, Your Honor.

THE COURT: Okay. All right.

And then, Ms. Holland, are you still with us?

MS. HOLLAND: Yes, Your Honor.

Dr. Cooper has made one production so far, I believe, and I apologize. I don't have the specific numbers on that ready to go. We have also undertaken collection efforts and are in the process of reviewing the results of those collections and plan for the production to the State as soon as possible.

MR. STONE: I believe they gave us 73 pages -- 73 pages of documents.

MS. HOLLAND: Thank you, Johnathan.

THE COURT: All right. And so I think -- Ms. Holland, I know y'all's objections and responses were due after Dr. Lau's as we discussed at the last hearing. So I think you've been party to all the communications the Court has had regarding, you know, collection and protection, and so just as with Dr. Lau, I would certainly encourage y'all to be very aggressive

in your review and ensure that you're timely making rolling productions so that we, you know, can all be assured of moving the case forward. Okay?

MS. HOLLAND: We will do so. Thank you.

THE COURT: All right. At this time the Court rules as follows on the motions that it's heard today: The Court, on the nonparty patients' verified expedited motion to stay production from the hospital systems in each of the two cause numbers, the Court grants in part and denies in part. The Court grants the stay insofar as at present the Court only orders production of the records from January 1, 2022, through present that have been contemplated within roll one.

The Court further notes in connection with that as follows: The motion for protection has only been considered in connection with the Lau proceeding, not yet with Cooper. I don't believe that this Court's ruling here today conflicts with any order out of the Cooper case.

And in connection with the Lau case, as it relates to any production to the nonparty patients and to the doctor's counsel, that's not a production to the State. And then as well, in connection with protective orders themselves, a person need only not to comply with the part of the subpoena from which protection is

sought, and the protection that is sought, my understanding based upon the Court's review of the comments in connection with Rule 197 -- 176 and then as well case law in the state of Texas is that the represented patients are interested in their records.

And so to that end, I'm looking at the order related to the unrepresented patients. As it relates to UT Southwestern, obviously no documents are being produced at this time until we get that issue. But once UT Southwestern either is properly represented by Mr. Walsh or with some new person, the Court orders production to go forward in connection with the unrepresented patients in both Lau and Cooper.

As it relates to the unrepresented patients for Children's, I order the production to go forward tomorrow to counsel for Dr. Cooper and Dr. Lau. The Court is going to set a hearing related to the in-camera review. We're going to set that hearing for -- well, given the volume, I had intended to set it on that 4/7 date.

Dr. Lau, do -- Counsel, do you think that's going to be sufficient? You're going to get the records. You're going to get back to Children's on the ones that you want redacted. If I set a hearing on the 7th, is that -- we think that's going to work, right?

MR. LEGG: Your Honor, I believe so. I would have to see the volume. If we needed to push back, we could advise the Court --

THE COURT: I'll plan to set it on the 7th and we can further discuss.

MR. LEGG: Thank you, Your Honor.

THE COURT: Okay. And so the Court's going to set the in-camera hearing for April the 7th at 9:00 a.m.

MR. FARQUHARSON: Judge, really quick. Johnathan and I both have -- I'm supposed to be on vacation and I think Johnathan has a conflict as well that day.

THE COURT: Johnathan -- Mr. Stone, do you have a conflict?

MR. STONE: Yes, Your Honor, I believe I do. I'm checking my calendar right now, but I believe I do.

THE COURT: The only other potential day that I've got is not going to be until the 16th at 9:00 a.m. And to be frank, I have a conflicting trial setting, so I can't promise y'all won't get bumped. But I'm happy to set y'all on the 16th instead but you may get bumped.

MR. STONE: I am teaching a class at Baylor

on the 7th, consumer protections. I can -- the 16th --

MR. SUTKER: It would actually help me the later date because I was -- I'm still going to --

THE COURT: Have redaction? Okay.

(Simultaneous speaking)

MR. SUTKER: -- production for more time. Because I didn't know that we've been focusing on just the unrepresented patients. They may be -- we may have to -- I didn't -- I think we were just going through the list in order. And if it's just unrepresented patients, that's obviously not a ton, but I think we're going to need more time.

THE COURT: Okay. So we'll do the 16th at 9:00 a.m. Again, I'm looking at the Court's order related to the unrepresented patients. So we're going to set the hearing contemplated by subpart D of the Court's order on April the 16th at 9:00 a.m.

MR. LEGG: Your Honor, for clarity. I believe you set, based on my notes, the venue hearing on the 7th. Do we --

THE COURT: I did. And we're going to come back and revisit in light of the fact that they said they have a conflict since I did set that hearing then.

Okay. In connection with this, I do require the State, prior to April 4th, to confer with

Children's regarding this concern about the patient notices.

Mr. Stone, Mr. Sutker, I think we've already addressed this today, but again, I just want to memorialize that part of the Court's order here related to these unrepresented patients is that y'all will sit down and confer regarding these addresses, and if we identify that something has been sent to an incorrect or an old address such that the hospital, being Children's, has a more updated address, we are going to renotice.

Do we have -- you understand?

MR. STONE: Yes, Your Honor.

MR. SUTKER: Yes, Your Honor.

THE COURT: And once UT Southwestern either continues to be represented by current counsel or has different counsel, they will have that same obligation. Again, this Court is very interested in making sure that all of these patients have notice related to their records. So that is the Court's ruling as it relates to the unrepresented patients. That is the only change to the Court's order related to the unrepresented patients.

Again, in connection with subpart B, the Court previously revoked its directive to begin rolling productions on March the 11th. I've changed that. And so productions are to begin on a rolling basis tomorrow.

And again, no records that are in the possession of UT Southwestern at this time. As soon as we have counsel or confirmed counsel in place, the production will begin.

As it relates to the represented patients, the Court similarly sets the hearing on subpart D for April the 16th at 9:00 a.m. The Court hereby suspends subsection E as to the represented patients in both the Lau and Cooper case until after the hearing on 4/16. So just to be clear, at this time the Court is finding that none of the records for the represented patients are contemplated to be produced to the State at present.

I do direct counsel for the represented patients and the State to substantively confer regarding discovery in this case related to the patient records to ascertain and to determine whether they can agree to this limited production to the State and any mechanism that they can see to move the case and discovery forward with less conflict.

Does anyone have any questions regarding the Court's ruling on the nonparty patients' verified expedited motions to stay?

MR. LOGAN: Your Honor, we would just move for the Court to reconsider having any productions made, whether to the State or not, given that there's a motion

for protection pending.

The second part that we would ask to reconsider is any productions for the unrepresented parties because that issue was before the Dallas County Court. It had taken it up at the hearing before the interlocutory appeal was filed, and therefore, that issue is stayed by the interlocutory appeal at that court until it's resolved.

THE COURT: As to the second point, the Court disagrees with your assessment, and so I decline to reconsider. But again, I want to be very clear in connection with the represented patients. The Court's order that was entered on February 28th, I am suspending subpart E. And so to be very, very clear, I am not contemplating in any way, shape, or form records for the represented patients going to the State prior to the time that we will all be back together again on April 16th. And I am ordering the nonparty patients and counsel for the State to sit down and to talk through, more than the limited discussion they had today, whether there is some way to move this case and the discovery forward in a manner which costs everyone less money and which is more patient.

Okay. That takes us --

MR. LOGAN: Your Honor.

THE COURT: Oh, sorry.

MR. LOGAN: Sorry.

Understanding the Court's order on the motion to reconsider, the patients, the represented patients, continue to have serious concerns about the production, including that the unrepresented patients who may have commingled documents, there may be logs that have their names on them. So, you know, it is something that I think we're probably going to have to seek review of. And I only say that --

THE COURT: I'm not surprised. Certainly we already all were aware that this is likely where we're headed. I wish that we were not.

MR. LOGAN: Understood. Yes, Your Honor.

THE COURT: So if you're saying that so I won't be offended --

MR. LOGAN: No. Partly, though, to give notice also that we will ask for an administrative stay. So I wanted to give the State notice of that as well as the Court that that's part of the relief.

THE COURT: Understood.

In connection with the State's motion for protective order, the Court at present takes that matter under advisement pending the Court [sic] providing the Court with supplemental regarding the issue that I asked

about. Surely there is some court in the state of Texas where this has happened before where there is, in fact, as we now have, a conflict between the issuing court and the county where the subpoena was served. And so how have the other courts in the state of Texas addressed that issue, and I would like to -- for your motion to be supplemented.

To the extent there are any other parties present here today who would also like to weigh in on that issue with any authority, you may also file any briefing to the Court before close of business on the 24th.

So at present, the motion for protection from the State remains pending receipt of that additional briefing.

Let me just ask, Mr. Sutker, do you have any questions whatsoever, sir?

MR. SUTKER: Just one, Your Honor, and maybe it's an easy ask in light of Mr. Logan's representation to the Court, but can rolling production begin on Monday versus tomorrow?

THE COURT: Instead of tomorrow? I thought you said you did have some of the records for the unrepresented ready to go.

MR. SUTKER: Well, no. What -- and if I

said that, I apologize. What I said was I have -- I have 10 to 12 records ready to go. What I don't know is they are represented or unrepresented. If they are -- if they are part of the unrepresented group, then certainly can get them out the door, but since I'm out of town, I may not be able to get that issue solely aligned before Monday.

THE COURT: Mr. Sutker, I sincerely apologize because I do know that you're out of town and I'm certainly not trying to be difficult or unaccommodating to your schedule, but just given the high level of conflict and, you know, everyone's differing decisions, the Court wants to make as few changes to the prior order as possible so that there is no confusion about what it is that I am ordering and so I'm -- again, I've permitted rolling production, so I'm certainly not requiring you to get everything out the door, but I would ask that your client begin getting some things out the door tomorrow, sir.

MR. SUTKER: Okay. And I just got a text from Ms. Cooper. It looks like we have two unrepresented Cooper patients done.

THE COURT: Okay, great. Send those out tomorrow and you have started rolling.

MR. SUTKER: Okay.

THE COURT: Okay. Mr. Stone, since you're with us on the video, anything nothing further you would like to add or ask for questions or clarification, sir?

MR. STONE: No, Your Honor. Thank you.

THE COURT: All right. Ms. Holland, I know you're also with us via Zoom.

MS. HOLLAND: Nothing to add, Your Honor. Thank you.

THE COURT: Thank you so much.

Counsel for Dr. Lau, anything at all?

MR. LEGG: Nothing, Your Honor.

THE COURT: Okay. And then the folks that are truly impacted by the Court's ruling, State, anything else for those that are present?

MR. FARQUHARSON: No.

THE COURT: Okay. And, Mr. Logan, sir, anything from you?

MR. LOGAN: No, Your Honor, and I very much appreciate the Court's patience over these hearings, so thank you.

THE COURT: So then I don't think you have anything to add, but I don't want to forget you.

MR. WALSH: Not on that topic, but I did think of something else that I think we need to get the State and the AG together on. I produced about 13- or

1400 pages of personnel files this week. And can they talk amongst -- can the State and the AG talk amongst themselves about whether I need to have that --

THE COURT: Clawed back?

MR. WALSH: -- clawed back or -- and that would include -- it's been produced to the defendants, too. So either -- can y'all figure that out about whether that needs to come back to me, or can that just be like the venue thing?

MR. FARQUHARSON: I thought we addressed ed this earlier. I don't feel --

THE COURT: I think we only expressly addressed the venue records. So I think his concern is, I'm worried that the current record doesn't cover the issue, and since I excused counsel for the AG, I think, given the concern regarding the issues, I'm going to ask can you contact her directly?

MR. WALSH: Sure, sure.

THE COURT: And I think what y'all should just do is file a notice with the Court as to whether or not you've agreed that those records will be clawed back or the production will remain and just file that on Monday along with the other items y'all are going to be updating or briefing me on.

MR. WALSH: Sure.

THE COURT: Okay? All right. Thank you, everyone. With that, we are going to be adjourned. Thank you.

(Pause in proceedings)

THE COURT: Everybody, I sincerely apologize. Dr. Lau's counsel brought to my attention, I set the venue hearing for the 7th. Since the State has advised that there's a conflict, it seems to be most provident for us to move the venue hearing from the 7th and set it as well for the 16th at 9:00 a.m.

State, do you concur?

MR. FARQUHARSON: Yes, Judge.

THE COURT: Okay. Lau Counsel?

MR. LEGG: Concur.

THE COURT: And I apologize, regarding letting Ms. Holika [sic] -- will you do me a favor and just confirm that she doesn't have any objection to that. I'm so sorry. I just let it go. So with that we'll go ahead and be adjourned.

(Proceedings concluded)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS   )
COUNTY OF COLLIN     )

I, Ashley Boyd, Official Court Reporter in and for the 493rd District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this EXPEDITED Reporter's Record is $427.50 and was paid by the State of Texas who is Plaintiff with the OFFICE OF THE ATTORNEY GENERAL.

WITNESS MY OFFICIAL HAND this the 27th day of March, 2025.

/s/ Ashley Boyd
Ashley Boyd, Texas CSR 11998
Expiration Date: 09/30/2025
Official Court Reporter
493rd District Court
2100 Bloomdale Road
Collin County, Texas
McKinney, Texas

# Exhibit D

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 493-07676-2024
TRIAL COURT CAUSE NO. 493-08026-2024

THE STATE OF TEXAS,                § IN THE DISTRICT COURT
                                   §
                                   §
         Plaintiff,                §
                                   §
VS.                                §
                                   § 493RD JUDICIAL DISTRICT
                                   §
MAY C. LAU, M.D.,                  §
                                   §
         Defendant.                § COLLIN COUNTY, TEXAS


THE STATE OF TEXAS,                § IN THE DISTRICT COURT
                                   §
                                   §
         Plaintiff,                §
                                   §
VS.                                §
                                   § 493RD JUDICIAL DISTRICT
                                   §
M. BRETT COOPER, M.D.,             §
                                   §
         Defendant.                § COLLIN COUNTY, TEXAS


*********************

MOTION TO SEAL HEARING

*********************

    On the 26th day of March, 2025, the following
proceedings came on to be heard in the above-entitled
and numbered cause before the Honorable Christine Nowak,
Judge presiding, held in McKinney, Collin County, Texas;

    Proceedings reported by machine shorthand.

A P P E A R A N C E S

FOR THE PLAINTIFF, THE STATE OF TEXAS:

    MR. DAVID SHATTO
    (VIA ZOOM)
    SBOT: #24104114
    OFFICE OF THE ATTORNEY GENERAL
    PO Box 12548
    Austin, Texas 78711
    Phone: 512-936-2613
    David.shatto@oag.texas.gov


    MR. ROBERT FARQUHARSON
    SBOT: #24100550
    OFFICE OF THE ATTORNEY GENERAL
    PO Box 12548
    Austin, Texas 78711
    Phone: 512-936-2613
    Robert.farquharson@oag.texas.gov


FOR THE DEFENDANT, MAY C. LAU, M.D.:

    MR. JOHN V. TREVINO, JR.
    SBOT: #24003082
    LEBOEUF LAW, PLLC
    325 North Saint Paul Street
    Suite 3400
    Dallas, Texas 75201
    Phone: 214-624-9803
    Info@leboeuflaw.com


FOR THE DEFENDANT, M. BRETT COOPER, M.D.:

    MS. ANIKA HOLLAND
    (VIA ZOOM)
    CA Bar#336071
    WILLKIE FARR & GALLAGHER, LLP
    333 Bush Street
    Floor 34
    San Francisco, California 94104
    Phone: 415-858-7411
    Aholland@willkie.com

- AND -

MS. ZOE PACKMAN
(VIA ZOOM)
CA Bar#347453
Willkie Farr & Gallagher, LLP
333 Bush Street
Floor 34
San Francisco, California 94104
Phone: 415-858-7411
Zpackman@willkie.com


FOR THE CHILDREN'S HEALTH NONPARTY PATIENTS:

MS. JACKIE COOPER
SBOT: #24050861
COOPER & SCULLY, PC
900 Jackson Street
Suite 100
Dallas, Texas 75202
214-712-9500
Jackie.Cooper@cooperscully.com

I N D E X

(MOTION TO SEAL)

3/26/25                                        Page   Vol

Appearances.....................................  2

Proceedings....................................  5


Movant's Motion to Seal.......................  6
Court's Ruling...............................  7

Plaintiff's Motion to Seal...................  8
Court's Ruling...............................  9

Reporter's Certificate....................... 13

P R O C E E D I N G S

THE COURT: At this time the Court calls the following Cause Numbers: 493-07676-2024. This is the State of Texas versus May C. Lau. As well the Court calls 493-08026-2024. This is the State of Texas versus M. Brett Cooper, M.D. In connection with each of these cases, there is a pending sealing request which we're here to address today.

The Court will just note for purposes of the record, we -- the hearing today was properly noticed. The Court has called both the hall and the courtroom. There are no persons from the public that are present. So we'll go ahead and address, first, Children's motion.

If I could have an appearance on behalf of counsel present here in the courtroom.

MS. COOPER: This is Jackie Cooper for non-party movant, Children's Health.

THE COURT: Thank you.

MR. FARQUHARSON: And Rob Farquharson for the State.

THE COURT: Thank you.

MR. TREVINO: John Trevino for Dr. Lau.

THE COURT: And with us via Zoom.

MS. HOLLAND: Anika Holland for Dr. Cooper.

MS. PACKMAN: Zoe Packman for Dr. Cooper.

MR. SHATTO: And David Shatto with the State.

THE COURT: All right. Thank you, everyone. Again, I'm just going to note for purposes of the record, the public was properly noticed in connection with today's hearing. As well, all persons associated with this cause were noticed that we were having the hearing on the sealing request today. So with that, I'm going to turn this over to Children's.

MS. COOPER: Thank you, Your Honor. I think the request is pretty simple. We filed a Rule 76A and the Court has ordered a temporary order -- or sorry -- a temporary sealing of the court record in question. We're not asking for the entire document to be sealed but rather just the exhibit that contains confidential information. So this is -- the permanent request is a little bit more narrow than the temporary request.

And I brought orders for the Court to review and for the State and whoever else wants to look at it, but it tracks almost exactly the language of the court's temporary order just changing it to exhibit versus the whole filing.

THE COURT: Again, I have noted that there are no persons present from the public, and thus there

are no public members who object. Let me ask at this time for all counsel who are present here today, do any of you have any objection whatsoever to permanently seal? If so, speak now.

MR. FARQUHARSON: None from the State.

MR. TREVINO: None, Your Honor, from Dr. Lau.

THE COURT: Dr. Cooper?

MR. SHATTO: None from Dr. Cooper.

THE COURT: All right. So that covering all counsel for parties who are present, the Court finds it's proper and appropriate to grant the request to permanently seal, and at this time, Counsel, I'll ask you to bring the proposed order forward.

While the Court's receiving that order, I'm just going to note as well for purposes of the record, the Court was provided two agreed orders which it has already executed between the AG and UT Southwestern, which the Court believes resolved the Rule 12 issue as well as the intervention.

Related to that as well are certain requests from Dr. Cooper's counsel to strike the intervention and certain requests by the State related to clawback and sanctions. I believe that the agreements between the AG's office and UT Southwestern

resolve all those issues. I would ask for the parties to confirm that I am correct and as well to provide the Court an order that says, in light of the execution of the agreed orders, all parties agreed the following motions are now moot and no longer relief is requested.

In light of the fact that UT Southwestern does now have counsel, obviously the Court stayed any protection from UT Southwestern pending them having counsel of record. Now that they will have counsel, the Court hereby reinstates its prior order to UT Southwestern to produce the relevant documents that have been ordered in connection with roll one.

Let me go ahead and just ask at this time, Children's, is there anything further that I can do for you?

MS. COOPER: No. Thank you, Your Honor.

THE COURT: Okay. State?

MR. FARQUHARSON: Thank you, Judge. Similar to Children's, the State also has a motion to seal on file, and it is relatively simple for the reasons that we set forth in our motion. We would ask that the documents represented therein be sealed.

THE COURT: All right. Again, I'll just note for purposes of the record, no persons are present from the public who object to the request for sealing.

Let me go ahead and just ask for all counsel who are present, is there any opposition or objection to the Court sealing pursuant to the State's request? Childrens's?

MS. COOPER: No, Your Honor.

THE COURT: Lau?

MR. TREVINO: No, Your Honor.

THE COURT: Cooper?

MS. HOLLAND: No, Your Honor.

THE COURT: All right. In light thereof, the Court hereby as well grants the State's request, and I'll ask if you'll please bring an order forward for the Court's execution at this time.

All right. Lastly, do you have a proposed order?

MR. FARQUHARSON: I believe David -- Mr. Shatto is going to e-mail one to the Court here momentarily.

THE COURT: Mr. Shatto, is that correct?

MR. SHATTO: That is correct. I can e-mail one to you in a moment.

THE COURT: Okay. So I just want to make sure. Mr. Miller is out of the office today, so please make sure that you're utilizing the 493rd and/or Ms. Patterson's e-mail, okay?

MR. SHATTO: Yes, Your Honor.

THE COURT: Okay. One final item that I just want to delineate. The parties have provided the Court a contact list, right? And I asked for everyone to identify two counsel of record per party or nonparty. Ms. Patterson, when she's sending out e-mails is going to continue to send e-mails to that contact list. If you want the information from the Court further disseminated past the two people who are on the contact list, it is y'all's responsibility to do so.

So if you have any additional members of your team -- so, for example, Dr. Lau, Dr. Cooper, for the State, you have more than those two lawyers, it's y'all's responsibility to send it out further than that. The number of lawyers at this juncture is too unwieldy for Ms. Patterson to be the laboring ore on those communications. So we'll take responsibility for notifying the contact list, but separate and beyond that, the responsibility is on y'all. I just wanted to make sure that I reiterated that while we were on the record.

Let me go ahead and ask at this time, Children's, anything else we should address in connection with today's hearing?

MS. COOPER: No. Thank you, Your Honor.

THE COURT: State?

MR. FARQUHARSON: I'm just curious. Last time -- I'm trying to remember where -- with respect to UT Southwestern and their obligations that came back up, had the Court ordered a certain date for production from them?

THE COURT: For Children's I had ordered production to begin on a rolling basis as of March 21st, and since we've already past the March 21 date, UT Southwestern's obligations would kick in now as well as a rolling production.

MR. FARQUHARSON: Okay. Thank you, Judge.

THE COURT: Dr. Lau, anything further?

MR. TREVINO: No, Your Honor.

THE COURT: And Dr. Cooper?

MR. SHATTO: No, Your Honor.

THE COURT: Okay. Well, it was lovely to see everyone so early on this gloomy day. If there's nothing further, then we'll go ahead and be adjourned, and I am having Ms. Patterson e-file each of the orders from today's hearing so that they'll be available to you readily, quickly. And again, we'll get an e-mail out to y'all asking for y'all to confirm the motions that are now moot and providing the Court a proposed order related to that. And with that we'll be adjourned.

(Proceedings concluded)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )
COUNTY OF COLLIN )

I, Ashley Boyd, Official Court Reporter in and for the 493rd District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this EXPEDITED Reporter's Record is $70.00 and was paid by OFFICE OF THE ATTORNEY GENERAL for the State of Texas.

WITNESS MY OFFICIAL HAND this the 28th day of March, 2025.

/s/ Ashley Boyd
Ashley Boyd, Texas CSR 11998
Expiration Date: 09/30/2025
Official Court Reporter
493rd District Court
2100 Bloomdale Road
Collin County, Texas
McKinney, Texas

# Exhibit E

Filed: 2/28/2025 1:24 PM
Michael Gould
District Clerk
Collin County, Texas
By Sarah Beasley Deputy
Envelope ID: 97928698

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 493RD JUDICIAL DISTRICT |
| | § | |
| MARY C. LAU, M.D., | § | |
| | § | |
| DEFENDANT. | § | COLLIN COUNTY, TEXAS |

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## ORDER

1.      The Court recognizes that the Parties and third parties have raised certain arguments, defenses, objections, or privileges to production of records containing protected health information in this matter. Without waiver of any such arguments, defenses, objections, or privileges in this or any other pending action, or for any future productions, the Court orders the following production:

   a. Children's Medical [University of Texas Southwestern Medical Center] shall prepare for production, with appropriate redactions to preserve protected health information, including patient identity, the medical, laboratory, billing, and prescription records for the care and treatment Dr. Cooper [Lau] provided or ordered for the patients relating to testosterone or puberty blockers from January 1, 2022, through the present.

   b. On or before March 11, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall begin production of records of patients represented by counsel described in No. 1 hereinabove to counsel for Dr. Cooper [Lau] and to the Court. Children's shall continue production on a rolling basis and shall complete production by March 21, 2025. Children's will also produce unredacted records within the parameters described in No. 1 hereinabove to counsel for represented patients and the Court.

c. On April 4, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall produce records described in No. 1 hereinabove, with any additional redactions, and designated as having further redactions requested by counsel for Dr. Cooper [Lau], to the Court via encrypted, electronic transfer. The party requesting further redactions shall request *in camera* review of redacted and unredacted, corresponding records. Counsel for Dr. Cooper [Lau] and counsel for represented patients shall provide a privilege log for any records withheld and/or redactions made at their request.

d. The Court will set a hearing on such *in camera* review within 14 days from date of receipt of request.

e. On April 4, 2025, counsel for Dr. Cooper [Lau] and counsel for represented patients shall produce any records described in No. 1 hereinabove, to which no additional redactions have been made to counsel for the State.

2. The Parties and Non-Parties may extend any deadlines herein by agreement or may move the Court for a reasonable extension for good cause.

SIGNED ON February 28, 2025.

_____
JUDGE PRESIDING

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97928698
Filing Code Description: Court Action-Signed Order
Filing Description: ORDER
Status as of 2/28/2025 1:39 PM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David G. Shatto | | david.shatto@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |

Associated Case Party: MBrettCooper

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Avishay Moshenberg | 24083532 | avi.moshenberg@lmbusinesslaw.com | 2/28/2025 1:24:20 PM | SENT |
| Nicholas Lawson | | Nick.Lawson@lmbusinesslaw.com | 2/28/2025 1:24:20 PM | SENT |
| Jervonne Newsome | | jnewsome@winston.com | 2/28/2025 1:24:20 PM | SENT |
| Thanh D.Nguyen | | tdnguyen@winston.com | 2/28/2025 1:24:20 PM | SENT |
| William Logan | | wlogan@winston.com | 2/28/2025 1:24:20 PM | SENT |
| Docket South | | ecf_houston@winston.com | 2/28/2025 1:24:20 PM | SENT |
| Anika  Holland | | AHolland@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Simona Agnolucci | | sagnolucci@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Barrington Dyer | | bdyer@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Zoe Packman | | zpackman@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Emma Rodriguez | | erodriguez@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Isabella Corbo | | icorbo@willkie.com | 2/28/2025 1:24:20 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97928698
Filing Code Description: Court Action-Signed Order
Filing Description: ORDER
Status as of 2/28/2025 1:39 PM CST

Associated Case Party: MBrettCooper

| | | | | |
|---|---|---|---|---|
| Isabella Corbo | | icorbo@willkie.com | 2/28/2025 1:24:20 PM | SENT |
| Remy Carreiro | | rcarreiro@willkie.com | 2/28/2025 1:24:20 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 2/28/2025 1:24:20 PM | SENT |
| Jackie Cooper | | Jackie.Cooper@cooperscully.com | 2/28/2025 1:24:20 PM | SENT |
| Cory Sutker | | Cory.Sutker@cooperscully.com | 2/28/2025 1:24:20 PM | SENT |
| Winston Office | | nonparty-patient-counsel@winston.com | 2/28/2025 1:24:20 PM | SENT |
| Delvary Turnipseed | | delvary.turnipseed@cooperscully.com | 2/28/2025 1:24:20 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Rob Farquharson
Bar No. 24100550
pauline.sisson@oag.texas.gov
Envelope ID: 99244982
Filing Code Description: Response
Filing Description: 20250403 States Resp to Second Emerg Mtn Stay with Exs A to E
Status as of 4/3/2025 1:30 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Houston Docketing | | ecf_houston@winston.com | 4/3/2025 1:22:13 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 4/3/2025 1:22:13 PM | SENT |

Associated Case Party: NonParty Patient No. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jervonne Newsome | | JNewsome@winston.com | 4/3/2025 1:22:13 PM | SENT |
| Thanh Nguyen | | TDNguyen@winston.com | 4/3/2025 1:22:13 PM | SENT |
| Evan Lewis | | edlewis@winston.com | 4/3/2025 1:22:13 PM | SENT |
| William Logan | | WLogan@winston.com | 4/3/2025 1:22:13 PM | SENT |
| Olivia Wogon | | owogon@winston.com | 4/3/2025 1:22:13 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Rob Farquharson
Bar No. 24100550
pauline.sisson@oag.texas.gov
Envelope ID: 99244982
Filing Code Description: Response
Filing Description: 20250403 States Resp to Second Emerg Mtn Stay with Exs A to E
Status as of 4/3/2025 1:30 PM CST

Associated Case Party: State of Texas

| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 4/3/2025 1:22:13 PM | SENT |